[No. S134253. Aug. 27, 2007.]

INTERNATIONAL FEDERATION OF PROFESSIONAL AND
TECHNICAL ENGINEERS, LOCAL 21, AFL-CIO et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
CONTRA COSTA NEWSPAPERS, INC., et al., Real Parties in Interest.

COUNSEL

Davis & Reno and Duane W. Reno for Petitioners.

Carroll, Burdick & McDonough, Ronald Yank, David M. Rice and Troy M. Yoshino for CDF Firefighters as Amicus Curiae on behalf of Petitioners and Real Party in Interest Oakland Police Officers' Association.

Weinberg, Roger & Rosenfeld, Antonio Ruiz and M. Suzanne Murphy for Operating Engineers Local Union No. 3 as Amicus Curiae on behalf of Petitioners and Real Party in Interest Oakland Police Officers' Association.

Mastagni, Holstedt, Amick, Miller, Johnsen & Uhrhammer, David E. Mastagni, Will M. Yamada and Stesha R. Hodges for California Correctional Peace Officers Association, Legal Defense Fund of the Peace Officers' Research Association of California, CAUSE-Statewide Law Enforcement Association, Deputy Sheriffs' Association of Alameda County, Placer County Deputy Sheriffs' Association, Sacramento County Deputy Sheriffs' Association, Sacramento Police Officers' Association, Stockton Police Officers' Association, San Mateo County Deputy Sheriffs' Association and San Francisco Deputy Sheriffs' Association as Amici Curiae on behalf of Petitioners and Real Party in Interest Oakland Police Officers' Association.

No appearance for Respondent.

Levy, Ram & Olson, Karl Olson and Erica L. Craven for Real Party in Interest Contra Costa Newspapers, Inc.

Rains, Lucia & Wilkinson and Allison Berry Wilkinson for Real Party in Interest Oakland Police Officers' Association.

Davis Wright Tremaine and Thomas R. Burke for Coalition of University Employees as Amicus Curiae on behalf of Real Party in Interest Contra Costa Newspapers, Inc.

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Howard Jarvis Taxpayers Association as Amicus Curiae on behalf of Real Party in Interest Contra Costa Newspapers, Inc.

Law Office of Judy Alexander and Judy Alexander for ANG Newspapers, Bakersfield Californian, California Newspaper Publishers Association, The Copley Press, Inc., Embarcadero Publishing Company, Gannett, Hearst Corporation, Los Angeles Times Communications LLC, McClatchy Company, Metro Newspapers, New York Times, Orange County Register, The Press Enterprise Company and San Jose Mercury News as Amici Curiae on behalf of Real Party in Interest Contra Costa Newspapers, Inc.

Alan L. Schlosser, Mark Schlosberg; Peter Eliasberg; Law Offices of Amitai Schwartz, Amitai Schwartz, Lisa Sitkin; and Jordan C. Budd for ACLU of Northern California, ACLU Foundation of Southern California and ACLU Foundation of San Diego & Imperial Counties as Amici Curiae on behalf of Real Party in Interest Contra Costa Newspapers, Inc.

**OPINION**

**GEORGE, C. J.**—This case presents the question whether the names and salaries of public employees earning $100,000 or more per year, including peace officers, are exempt from public disclosure under the California Public Records Act (Gov. Code, § 6250 et seq.).[1] The Court of Appeal concluded they are not, because "well-established norms of California public policy and American public employment exclude public employee names and salaries from the zone of financial privacy protection." For the reasons explained below, we affirm the judgment of the Court of Appeal.

I.

Reporters employed by Contra Costa Newspapers, Inc. (the Newspapers), requested under the California Public Records Act (the Act) that the City of Oakland (the City) provide them with the names, job titles, and gross salaries of all city employees who earned $100,000 or more in fiscal year 2003–2004, including those individuals whose base salaries equaled or exceeded that amount and those who earned a lower base salary but were paid $100,000 or more because of overtime work. The City agreed to disclose salary and overtime information for each job classification, but refused to provide salary information linked to individual employees, claiming that individually identified salary information is exempt from disclosure. The Newspapers sought a writ of mandate in the superior court to compel the City to disclose the requested salary records.

The City's refusal was a departure from its past practice. At least during the years 1996 through 2003, the City's personnel director disclosed the names, job titles, and salaries of all city employees, and this information was published in a local newspaper. The City changed its policy in May 2004, citing as factors supporting this decision (1) two appellate court decisions that recognized a privacy right in public-employee salary information (*Teamsters Local 856 v. Priceless, LLC* (2003) 112 Cal.App.4th 1500 [5 Cal.Rptr.3d 847] (*Priceless*) and *City of Los Angeles v. Superior Court* (2003) 111 Cal.App.4th 883 [3 Cal.Rptr.3d 915] (*City of Los Angeles*)); (2) increased concerns regarding financial privacy; and (3) strong opposition to its prior policy from two unions that represented city employees. In addition, because the City has a merit-based compensation system, it concluded that disclosing the salaries of public employees by name each year would permit members of the public to construct a performance evaluation of each employee by calculating the percentage increase in his or her salary from year to year, which would invade the employee's privacy.

---

[1] All further statutory references are to the Government Code unless otherwise noted.

The superior court granted leave to intervene to two employee unions, the International Federation of Professional and Technical Engineers, Local 21, AFL-CIO (Local 21), and the Oakland Police Officers Association (the Police Officers Association). The superior court granted the Newspapers' petition and ordered the City to disclose the requested salary information. The court concluded that the City and the intervening unions had failed to establish that city employees who earn $100,000 or more have any protected privacy interest in information related to their salary, and found that such salary information consistently had been disclosed in the past, both by the City and by federal, state, and other local governments. Although the City and some other cities recently had refused to disclose individually identified salary information, the court concluded that these refusals appeared to reflect "uncertainty about the proper interpretation of the [Act] in light of recent court decisions."

The superior court also concluded that, even assuming a privacy interest existed, that interest is outweighed by the public interest in disclosure. The court found "extremely speculative" the fears expressed by two declarants that identity fraud and unwanted solicitations would ensue in the event information disclosing their salaries were to be released. Furthermore, the superior court found, the evidence presented by the Newspapers supports their contention that disclosure of the names of employees in connection with their individual salaries is "in many cases necessary to disclose inefficiency, favoritism, nepotism, and fraud with respect to the government's use of public funds for employee salaries." The court also rejected the Police Officers Association's contention that a different result is required under Penal Code sections 832.7 and 832.8 with regard to its members because those statutes render peace officer personnel records confidential, the court concluding that salary information is not included within the definition of "personnel records" under the latter statute.

The City chose not to appeal from the judgment rendered by the superior court. Local 21 and the Police Officers Association (collectively, the Unions) filed a petition for writ of mandate in the Court of Appeal. After issuing an order to show cause, that court denied the Unions' petitions. The Unions then successfully sought review in this court.

II.

A.

█ Openness in government is essential to the functioning of a democracy. "Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals

must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process." (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470], fn. omitted.) In adopting the Act, the Legislature declared that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) As the result of an initiative adopted by the voters in 2004, this principle is now enshrined in the state Constitution: "The people have the right of access to information concerning the conduct of the people's business, and therefore, . . . the writings of public officials and agencies shall be open to public scrutiny." (Cal. Const., art. I, § 3, subd. (b)(1).)

The Legislature has been "mindful of the right of individuals to privacy." (§ 6250.) Set forth in the Act are numerous exceptions to the requirement of public disclosure, many of which are designed to protect individual privacy. (See § 6254.)[2] In addition, a catchall exception applies if "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 6255, subd. (a).) Unless one of the exceptions stated in the Act applies, the public is entitled to access to "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency." (§ 6252, subd. (e); see § 6253, subd. (a).)

The parties agree that the records at issue meet the definition of public records contained in the Act. (§ 6252, subd. (d); § 6253, subd. (a).) The records therefore must be disclosed unless one of the statutory exceptions applies. The party seeking to withhold public records bears the burden of demonstrating that an exception applies. (See § 6255.) At issue here is the exemption for "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." (§ 6254, subd. (c).) The Unions contend that the salaries of named public employees are "personnel . . . or similar files" and that their disclosure constitutes an "unwarranted invasion of personal privacy" under this exception.

We need not decide whether the records of a public entity's payroll expenditures constitute "personnel . . . or similar files" because, assuming for purposes of discussion that they do, the exemption does not apply; the disclosure here does not constitute an "unwarranted invasion of personal privacy." (§ 6254, subd. (c).) This exemption requires us to balance two competing interests, both of which the Act seeks to protect—the public's

---

[2] The 2004 initiative that amended the state Constitution to include a right of access to public records explicitly preserves such statutory exceptions. (Cal. Const., art. I, § 3, subd. (b)(5).)

interest in disclosure and the individual's interest in personal privacy. Balancing these interests, we conclude that disclosure of the salary information at issue in the present case would not constitute an unwarranted invasion of personal privacy.

■ "A particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*).)[3] The parties agree that individuals have a legally recognized privacy interest in their personal financial information. Even before the explicit incorporation of the right of privacy into our state Constitution, we recognized that "the protection of one's personal financial affairs and those of his (or her) spouse and children against compulsory public disclosure is an aspect of the zone of privacy which is protected by the Fourth Amendment and which also falls within that penumbra of constitutional rights into which the government may not intrude absent a showing of compelling need and that the intrusion is not overly broad." (*City of Carmel-by-the-Sea v. Young* (1970) 2 Cal.3d 259, 268 [85 Cal.Rptr. 1, 466 P.2d 225] (*City of Carmel*).) The financial disclosure statute at issue in *City of Carmel* required every public officer and every candidate for state or local office to disclose the nature and extent of his or her investments in excess of $10,000 as well as those of his or her spouse and their minor children. We held that the law was an overbroad intrusion into the right of privacy and thereby invalidly restricted the right to seek or hold public office or employment. "[T]he right of privacy concerns one's feelings and one's own peace of mind [citation], and certainly one's personal financial affairs are an essential element of such peace of mind." (*Ibid.*) In *City of Carmel,* we balanced the government's need to minimize conflicts of interest against the individual's right to maintain privacy in his or her personal financial affairs, concluding that the financial disclosure statute at issue was unconstitutional because it made no attempt to link the disclosure requirements to the dealings or assets that might be expected to give rise to a conflict. (*Id.* at p. 269; but see *County of Nevada v. MacMillen* (1974) 11 Cal.3d 662 [114 Cal.Rptr. 345, 522 P.2d 1345] [upholding later enacted, more narrowly drawn financial disclosure law].)

---

[3] As we stated in *Commission on Peace Officer Standards and Training v. Superior Court* (2007) 42 Cal.4th 278, 300, footnote 11 (*Commission on Peace Officer Standards*): "Our decision in *Hill, supra,* 7 Cal.4th 1, defined the elements that must be proved in order to establish a claim for invasion of the state constitutional right of privacy. Although we find the definition of privacy used in *Hill* to be useful in the present context, we do not intend to suggest that an intrusion upon a privacy interest must rise to the level of an invasion of the constitutional right of privacy in order to be recognized under . . . section 6254, subdivision (c)."

The statute at issue in *City of Carmel* required disclosure of personal financial matters unrelated to the individual's public employment. The present case, in contrast, involves disclosure of financial matters directly related to the individual's public employment. Of course, we recognize that many individuals, including public employees, may be uncomfortable with the prospect of others knowing their salary and that many of these individuals would share that information only on a selective basis, even within the workplace. Nor do we question that public disclosure of an individual's salary may cause discomfort or embarrassment. Nonetheless, in light of the strong public policy supporting transparency in government, an individual's expectation of privacy in a salary earned in public employment is significantly less than the privacy expectation regarding income earned in the private sector.

■ To the extent some public employees may expect their salaries to remain a private matter, that expectation is not a reasonable one and is, accordingly, entitled to diminished weight in the balancing test we apply under section 6254, subdivision (c). The "customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." (*Hill, supra,* 7 Cal.4th at p. 36.) "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." (*Id.* at p. 37.) The "broadly based and widely accepted community norm[]" applicable to government employee salary information is public disclosure.

Well before the Act was adopted, the Attorney General stated that "the name of every public officer and employee, as well as the amount of his salary, is a matter of public record." (*State Employees' Retirement Act,* 25 Ops.Cal.Atty.Gen. 90, 91 (1955) [concluding that state-paid retirement benefits are public records].) Following adoption of the Act, the Attorney General consistently has maintained that same position. (See *County Payroll Records as Public Records,* 60 Ops.Cal.Atty.Gen. 110 (1977) [county payroll records of names and amounts received by retirees are public records]; *Records for Performance Awards,* 68 Ops.Cal.Atty.Gen. 73 (1985) [records of the amounts and reasons for performance awards granted to executive managers of a city are subject to disclosure under the Act].)

The Attorney General's long-standing position that government payroll information is public is consistent with the widespread practice of federal, state, and local governments.[4] Evidence submitted to the superior court by

---

[4] Local 21 cites a line of federal cases, decided under analogous provisions of the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552), that have recognized a privacy interest in the salaries of employees of private companies who are paid with public funds. (See, e.g., *Painting Industry of Hawaii v. Dept. of Air Force* (9th Cir. 1994) 26 F.3d 1479, 1483–1484;

the Newspapers demonstrates that disclosure of salary information has been the practice of both the state and of local governments, including not only the City of Oakland itself but also the nearby City of Berkeley, the City and County of San Francisco, as well as Contra Costa County. The Newspapers' evidence also establishes that it is a policy of the State Controller to consider the name and salary of every public employee a matter of public record and to disclose this information to any member of the public upon request. Additionally, federal regulations require that the salary rates, including special performance awards and bonuses, of most of its employees be made public. (5 C.F.R. § 293.311 (2007).) The Court of Appeal in the present case, undertaking a review of case law from other jurisdictions, observed that "disclosure of public employee names and salaries is overwhelmingly the norm."[5]

---

*Painting and Drywall Work Preservation Fund v. HUD* (D.C. Cir. 1991) 936 F.2d 1300, 1303; *Hopkins v. U.S. Dept. of Housing & Urban Dev.* (2d Cir. 1991) 929 F.2d 81, 87–88; *Sheet Metal Workers v. Dept. of Veterans Affairs* (3d Cir. 1998) 135 F.3d 891, 903; see also *Campbell v. United States Civil Service Commission* (10th Cir. 1976) 539 F.2d 58, 62.) These cases are distinguishable from the present one because they do not involve public employees.

[5] The Court of Appeal cited the following cases: *Local 1264 v. Municipality of Anchorage* (Alaska 1999) 973 P.2d 1132 (disclosure of municipal employees' names and salaries does not violate their constitutional right of privacy or municipal code provision exempting personnel records from disclosure); *Richmond County &c. v. Southeastern &c. Corp.* (1984) 252 Ga. 19 [311 S.E.2d 806] (county hospital authority required to disclose names and salaries of employees earning $28,000 or more per year); *Magic Valley Newspapers v. Medical Center* (2002) 138 Idaho 143 [59 P.3d 314] (names and salaries of employees earning more than $50,000 per year not exempt from disclosure under public records law); *People ex rel. Recktenwald v. Janura* (1978) 59 Ill.App.3d 143 [17 Ill.Dec. 129, 376 N.E.2d 22] (county forest preserve district required to disclose names and salaries of employees); *Clymer v. City of Cedar Rapids* (Iowa 1999) 601 N.W.2d 42 (compensation of city employees, including amount of sick leave used, subject to disclosure under open records act); *State Dept. of SRS v. Public Employee Relations Board* (1991) 249 Kan. 163 [815 P.2d 66] (statute exempted personnel records but required disclosure of employee names, salaries, and length of employment); *Caple v. Brown* (La.Ct.App. 1975) 323 So.2d 217 (sheriff required to disclose records of salary fund); *Moberly v. Herboldsheimer* (1975) 276 Md. 211 [345 A.2d 855] (hospital required to disclose salary of director); *Hastings & Sons Publishing Co. v. City Treasurer of Lynn* (1978) 374 Mass. 812 [375 N.E.2d 299] (city required to disclose payroll records, including payroll records of police department); *Penokie v. MTU* (1980) 93 Mich.App. 650 [287 N.W.2d 304] (public university required to disclose salaries and wages of university employees); *MS. Dept. of Wildlife v. Wildlife Enf. Off.* (Miss. 1999) 740 So.2d 925 (state agency required to disclose amount of compensation time accrued by each of its employees); *Pulitzer Pub. v. MOSERS* (Mo.Ct.App. 1996) 927 S.W.2d 477 (statute requiring disclosure of public employees' salaries also required disclosure of retirees' pensions); *Mans v. Lebanon School Bd.* (1972) 112 N.H. 160 [290 A.2d 866] (school board required to disclose teachers' salaries); *Matter of Winston v. Mangan* (Sup.Ct. 1972) 72 Misc.2d 280 [338 N.Y.S.2d 654] (list of park district employees and their salaries subject to disclosure); *State ex rel. Petty v. Wurst* (1989) 49 OhioApp.3d 59 [550 N.E.2d 214] (county required to provide names and salary rates or total compensation of its employees); *Moak, et al., Aplnt. v. Phila. News., et al.* (1975) 18 Pa.Commw. 599 [336 A.2d 920] (city finance department required to disclose police department payroll records); *Cleveland Newspapers, Inc. v. Bradley, etc.* (Tenn.Ct.App. 1981)

Counterbalancing any cognizable interest that public employees may have in avoiding disclosure of their salaries is the strong public interest in knowing how the government spends its money. As we have observed in the context of the public's right of access to court proceedings and documents, public access makes it possible for members of the public " 'to expose corruption, incompetence, inefficiency, prejudice, and favoritism.' " (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1211, fn. 28 [86 Cal.Rptr.2d 778, 980 P.2d 337], quoting *Estate of Hearst* (1977) 67 Cal.App.3d 777 [136 Cal.Rptr. 821].)

■ In the analogous context of open meeting laws, a distinction has been drawn between personnel matters, which may be discussed in sessions closed to the public, and salaries, which must be discussed in open session. (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947 [196 Cal.Rptr. 45].) California's open meetings law, the Ralph M. Brown Act (Brown Act) (§ 54950 et seq.), requires that the meetings of local legislative bodies be open to the public, except as otherwise provided. (§ 54953.)[6] The Brown Act permits a closed session for the consideration of "the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee . . . ." (§ 54957, subd. (b)(1).) Accordingly, the *San Diego Union* case held that the Brown Act permitted a city council to discuss, in closed session, the performance of various city management employees, but that any discussion or decision about salary increases for those employees must take place in

---

621 S.W.2d 763 (hospital required to disclose payroll records); *Redding v. Brady* (Utah 1980) 606 P.2d 1193 (state college required to disclose names and gross salaries of employees); but cf. *Redding v. Jacobsen* (Utah 1981) 638 P.2d 503 (statute prohibiting disclosure of salary information for employees of institutions of higher education is not unconstitutional); *Tacoma Public Library v. Woessner* (1998) 90 Wn.App. 205 [951 P.2d 357] (records of employee names, salaries, benefits, and vacation and sick leave pay not exempt from disclosure); but see *Smith v. Okanogan County* (2000) 100 Wn.App. 7 [994 P.2d 857] (list of persons employed by county prosecutor's office, including titles and rates of compensation, not within scope of public records act); *Board of Sch. Directors of Milwaukee v. WERC* (1969) 42 Wis.2d 637 [168 N.W.2d 92] (names, addresses, and salaries of public school teachers are public record).

Neither Local 21 nor the Police Officers Association challenges the Court of Appeal's conclusions regarding the prevailing norm in other states. We note that an American Law Reports Annotation on the subject identified only two cases in which records disclosing the salaries of current government employees were held to be exempt from disclosure under state public records laws: *Priceless, supra,* 112 Cal.App.4th 1500, and *Smith v. Okanogan County, supra,* 994 P.2d 857. (Annot., Payroll Records of Individual Government Employees as Subject to Disclosure to Public (1980) 100 A.L.R.3d 699, 705–706, § 3[b], and later cases (2006 supp.) p. 80, § 3[b].)

[6] The Brown Act serves the same democratic purposes as the California Public Records Act (§ 6250 et seq.): "The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (§ 54950.)

open session. The court rejected the argument that salary fell within the exception for discussions of "employment" or "evaluation of performance" because an employee's salary was a term and condition of the employee's continued employment and closely related to performance. "Salaries and other terms of compensation constitute municipal budgetary matters of substantial public interest warranting open discussion and eventual electoral . . . ratification. Public visibility breeds public awareness which in turn fosters public activism[,] politically and subtly encouraging the governmental entity to permit public participation in the discussion process. It is difficult to imagine a more critical time for public scrutiny of its governmental decision-making process than when the latter is determining how it shall spend public funds." (*San Diego Union, supra,* 146 Cal.App.3d at p. 955.)[7]

These same considerations support the conclusion that salary information should not be exempt from disclosure under the Act. The Newspapers submitted to the trial court numerous examples of articles published throughout the state that used information concerning public employee salaries to illustrate claimed nepotism, favoritism, or financial mismanagement in state and local government. For instance, one article disclosed that a city department manager's wife was earning $80,000 as an information technology specialist assigned to that department while the department was suffering a budget shortfall requiring layoffs. Another article exposed the circumstance that a city assessor hired a number of individuals who had contributed to (or worked on) her election campaign. Other articles revealed numerous additional instances of questionable use of public funds. Changes in a school district pension system resulted in large pension increases to some of the district's top administrators. Legislation reclassified an increasing number of state employees as safety workers eligible for pensions higher than those received by other state workers. A University of California executive received a substantial pay raise at the same time the university was laying off other employees and raising student tuition. A city firefighter, a police officer, and a transit supervisor were the city's highest grossing employees due to overtime pay. These examples, even when they reveal no impropriety, amply illustrate that disclosure of government salary information serves a significant public interest.

---

[7] The only portion of the Act that addresses public employee compensation directly is section 6254.8, which provides that "[e]very employment contract between a state or local agency and any public official or public employee is a public record which is not subject to" the exemptions specified in sections 6254 and 6255. Although the Newspapers do not contend that Oakland's employees come within the terms of section 6254.8, this statute indicates that the Legislature viewed the amount of compensation paid to public employees in the context of employment contracts as a matter of public interest so substantial that it could not be outweighed by any claim of privacy (under § 6254, subd. (c)) or other public interests (under § 6255, subd. (a)).

In upholding the trial court's order requiring disclosure, the Court of Appeal expressly declined to follow *Priceless, supra*, 112 Cal.App.4th 1500, a case that, as noted above, contributed to the City of Oakland's decision to discontinue its historical practice of disclosing the salaries of its employees. Like the Court of Appeal, we find *Priceless* to be unpersuasive.

In that case, a newspaper requested, from a number of cities, disclosure of the names and salaries of city employees. The appellate court upheld a trial court order granting a preliminary injunction, sought by a number of employee unions, requiring the cities to withhold such records pending resolution of the case. In that procedural posture and limited context, the appellate court concluded that the unions were likely to prevail on their claim that the records were exempt from disclosure under section 6254, subdivision (c).

The Court of Appeal in *Priceless* rejected the newspaper's argument that public employees had no right to control the dissemination of their individually identified salary information. The appellate court reasoned that the Act recognizes a right of privacy in one's personnel files. (§ 6254, subd. (c); *Priceless, supra*, 112 Cal.App.4th at pp. 1514–1515.) Because the parties had stipulated that the details of the city employees' salaries were maintained in confidential personnel files, the Court of Appeal found support for "the trial court's recognition that a privacy interest was at stake and that the expectation of privacy was reasonable under the circumstances." (*Priceless, supra*, 112 Cal.App.4th at p. 1516, fn. omitted.) Weighing the individual's privacy interests against the public's right to disclosure, the appellate court found no evidence in the trial record to support the newspaper's contention that "revealing the individuals' names would shed light on government conduct." (*Id.* at p. 1522.) The reviewing court concluded that on the record before it, the public interest in knowing how public money is spent and in being informed of the earnings of government employees at various levels was met by the bare disclosure of the staff positions and of the compensation set for each position, without the need to disclose the names of the employees occupying those positions. The court characterized as "speculative" the newspaper's contention that revealing the names of employees might disclose improprieties, but also noted that both sides would have the "opportunity to present additional evidence" on the issue. (*Id.* at pp. 1522–1523.) Ultimately, the appellate court upheld the preliminary injunction "in light of the limited evidence before the trial court." (*Id.* at p. 1523.)

Because of the procedural posture of the case, the precedential value of *Priceless* is slight. In contrast to the limited record available to the court in *Priceless*, the present case was decided after a full hearing. As noted above, the Newspapers presented substantial evidence demonstrating that disclosure of the names and salaries of public employees would serve the public interest

sought to be protected by the Act. The Newspapers also presented evidence concerning the historic practices of other governmental entities, which supported the conclusion that any expectation of privacy that public employees may have that their salaries will be confidential is not reasonable.

■ To the extent the decision in *Priceless* may be read to stand for the proposition that the practice of particular governmental entities in refusing to disclose salary information can create a privacy interest in those records that must be recognized under the Act, we disagree. The appellate court in *Priceless* concluded that because the cities that were parties in that case kept salary information confidential, the employees' expectation of privacy in their salary information was reasonable. The court's decision focused narrowly on the practice of the particular cities whose records were being sought in that case, apparently because those practices were the only ones in evidence. The practice of a few cities does not, however, demonstrate a "broadly based and widely accepted community norm[]." (*Hill, supra,* 7 Cal.4th at p. 37.) The Act should apply in the same way to comparable records maintained by comparable governmental entities. Whether or not a particular type of record is exempt should not depend upon the peculiar practice of the government entity at issue—otherwise, an agency could transform public records into private ones simply by refusing to disclose them over a period of time.

Local 21 also contends that before individually identified salary information may be disclosed, section 6254, subdivision (c) must be applied on a case-by-case basis, taking into account the privacy interest peculiar to the individual employee as well as the particular public interest in being informed of the salary of that employee.[8] The approach proposed by Local 21 would reverse the presumption of openness contained in the Act. The records

---

[8] In support of this argument, Local 21 relies upon the decision of the United States Supreme Court in *National Archives and Records Admin. v. Favish* (2004) 541 U.S. 157 [158 L.Ed.2d 319, 124 S.Ct. 1570] (*Favish*), interpreting the FOIA. As explained below, because the provision of the FOIA interpreted in *Favish* is dissimilar to section 6254, subdivision (c), that case is inapposite.

*Favish* denied relief to an individual seeking to compel the production of death-scene photographs of the body of the President's deputy counsel, whose death resulted from an apparent suicide. The high court considered the FOIA's exemption for "records or information compiled for law enforcement purposes" when their production "*could reasonably be expected to constitute an unwarranted invasion of personal privacy.*" (5 U.S.C. § 552(b)(7)(C), italics added.) In recognizing that the deceased's surviving family members had a privacy interest in the photographs of his body, the high court took an expansive view of the concept of personal privacy. It specifically relied upon the circumstance that the language used in the law enforcement records exemption—" 'could reasonably be expected to constitute an unwarranted invasion of personal privacy' "—was "in marked contrast to" the language used in the exemption for personnel records, which applies only when the disclosure " 'would constitute a clearly unwarranted invasion of personal privacy.' " (*Favish, supra,* 541 U.S. at p. 165, quoting 5 U.S.C. § 552(b)(6), (7).)

The high court held that "[w]here the privacy concerns addressed by [the law enforcement records exemption] are present, the exemption requires the person requesting the information

at issue are presumptively open because they contain "information relating to the conduct of the public's business." (§ 6252, subd. (e).) The burden is on the agency maintaining the records to demonstrate that the record in question is exempt. (§ 6255.) The City and the Unions failed to present any evidence establishing that the City's consistent past practice of disclosing its employees' salaries created any safety or privacy problems for those employees that would outweigh the public interest in disclosure.

Claims for exemption based upon facts and circumstances peculiar to an individual and his or her duties could, of course, be considered either under section 6254, subdivision (c) or under the catchall exemption, which applies when "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 6255, subd. (a).) For example, the Police Officers Association contends that officers who are working undercover often receive large amounts of overtime pay, and that disclosure of their names and salaries could reveal their identities and endanger their safety. If an officer's anonymity is essential to his or her safety, the need to protect the officer would outweigh the public interest in disclosure and would justify withholding the officer's name. (*Commission on Peace Officer Standards, supra,* 42 Cal.4th at p. 301.) "The public has a strong interest in maintaining the safety and efficacy of its law enforcement agencies. But '[t]he prospect that somehow this information in the hands of the press will increase the danger to some . . . cannot alone support a finding in favor of nondisclosure as to all.' (*CBS, Inc. v. Block*[, *supra*,] 42 Cal.3d [at p.] 652 : . . .) The means for protecting such officers is to segregate the information relating to them from the records that are disclosed." (*Commission on Peace Officer Standards*, *supra*, 42 Cal.4th at p. 301; see also Gov. Code, § 6257; *American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 453, fn. 13 [186 Cal.Rptr. 235, 651 P.2d 822].) Neither the City nor the Unions offered any evidence

to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted." (*Favish, supra,* 541 U.S. at p. 172.) The court in *Favish* stated that the exemption in 5 United States Code section 552(b)(7)(C) "requires us to protect, in the proper degree, the personal privacy of citizens against the uncontrolled release of information compiled through the power of the State." (*Favish,* at p. 172.) When, as in *Favish,* the requesting party seeks the disclosure in order to show that the responsible government officials acted improperly, "the requester must establish more than a bare suspicion in order to obtain disclosure." (*Id.* at p. 174.)

The law enforcement records exemption at issue in *Favish* is not comparable to the personnel records exemption of the Act, and shifting the burden of proof to the party seeking disclosure under the Act would be unwarranted. Furthermore, the payroll records here at issue, unlike information collected and maintained solely for law enforcement purposes, plainly are relevant to the business of the government.

in the superior court that salary information pertaining to particular individuals should be exempted under sections 6254, subdivision (c) or 6255, subdivision (a).

## B.

Local 21 argues that even if the salaries of government employees are a matter of public record, "limitations on the method of disclosure of that information . . . are appropriate to prevent intrusions upon constitutionally protected privacy rights." Local 21 contends that the mass, indiscriminate disclosure of salary information related to all City of Oakland employees earning $100,000 or more constitutes an invasion of their right of privacy under article I, section 1 of the California Constitution, because providing the information in that form could contribute to the accumulation of information concerning these individuals that might be exploited by commercial interests. For example, Local 21 asserts that "[a] database of government employees who make $100,000 a year or more would obviously be of great commercial interest to marketers of certain kinds of investments and insurance policies," who could supplement this information with addresses, phone numbers, or e-mail addresses obtainable on the Internet and contact employees to solicit their business. Therefore, Local 21 argues, the issue whether the salaries of government employees must be disclosed should be decided on a case-by-case basis, taking into account the particular privacy interest of the individual involved and the asserted public interest in the disclosure of that individual's salary.

The party claiming a violation of the constitutional right of privacy established in article I, section 1 of the California Constitution must establish (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest. (*Hill, supra,* 7 Cal.4th at pp. 39–40.) As discussed above, we conclude that public employees do not have a reasonable expectation of privacy in the amount of their salaries. Furthermore, Local 21 offered no evidence in the superior court supporting its assertion that the information at issue was likely to be exploited by commercial interests in a manner that would invade the privacy of employees. As the superior court observed, Local 21 has not introduced any evidence of adverse consequences resulting from the disclosure of this information in the past, although the information regularly was published in a local newspaper.

Even were we to assume that Local 21 is correct in asserting that the information at issue might be exploited by commercial enterprises, that circumstance alone would not render disclosure of the information here at issue a violation of the constitutional right of privacy. In order to determine

whether an alleged invasion of privacy is sufficiently serious to constitute a violation of that constitutional right, the competing privacy and nonprivacy interests must be balanced. (*Hill, supra*, 7 Cal.4th at p. 37.) "Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest." (*Id.* at p. 38.)

As discussed above, the public has a strong, well-established interest in the amount of salary paid to public employees. Indeed, Local 21 does not dispute that the job classifications of individual employees and the range of pay associated with those classifications should be available to the public. The interest of employees in avoiding unwanted solicitations or marketing efforts is, on the other hand, comparatively weak. The City has not been asked to disclose any contact information for these employees, such as home addresses or telephone numbers. (Cf. *San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1021 [88 Cal.Rptr.2d 552] [city not required to disclose names, addresses, and telephone numbers of persons who made complaints about airport noise, because invasion of privacy not outweighed by public interest in disclosure under § 6255]; see also *Department of Defense v. FLRA* (1994) 510 U.S. 487 [127 L.Ed.2d 325, 114 S.Ct. 1006] [FOIA does not require federal agencies to disclose employees' home addresses to union].)

Local 21 cites *Westbrook v. County of Los Angeles* (1994) 27 Cal.App.4th 157 [32 Cal.Rptr.2d 382] (*Westbrook*) and provisions of the California Rules of Court as demonstrating a constitutionally cognizable privacy interest in preventing commercial enterprises from employing government records to compile and exploit personal information. (See Cal. Rules of Court, rule 2.500 et seq.) Neither *Westbrook* nor the California Rules of Court support such an expansive view of the constitutional right of privacy. In *Westbrook*, a person in the business of selling criminal offender background information brought an action to compel a municipal court to sell him computer tapes containing copies of the court's information system. The system contained a plethora of information obtained from criminal case files, including not only information concerning the charges and their disposition but also personal identifying information such as the date of birth, race, sex, personal description, and Social Security number of each defendant. (*Westbrook, supra*, 27 Cal.App.4th at p. 161.) The Court of Appeal concluded that the distribution of such information would violate Penal Code section 13300, which generally prohibits a local criminal justice agency, including a court, from distributing information that relates a person's criminal history. The court reasoned that although the public was entitled to access individual court files, providing electronic access in the form of the court's information system would permit the compilation and distribution of criminal histories, in violation of the statute. (*Westbrook, supra*, at pp. 163–165.)

The court in *Westbrook* also concluded that the "state constitutional right of privacy extends to protect defendants from unauthorized disclosure of criminal history records." (*Westbrook, supra,* 27 Cal.App.4th at pp. 165–166, citing *Craig v. Municipal Court* (1979) 100 Cal.App.3d 69, 76–77 [161 Cal.Rptr. 19].) In support of this conclusion, *Westbrook* cited *U. S. Dept. of Justice v. Reporters Committee* (1989) 489 U.S. 749 [103 L.Ed.2d 774, 109 S.Ct. 1468], which held that the FOIA did not require the disclosure of an individual citizen's rap sheet compiled by the Department of Justice. The high court in that case concluded that such disclosure "can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.' " (*Id.* at p. 780.) The decisions in *Westbrook* and *Reporters Committee* protect sensitive information contained in governmental records that does not, when separated from those records and compiled, contribute to the public's understanding of government operations.

The California Rules of Court cited by the Police Officers Association similarly serve to prevent the compilation of private information contained in court records. The rules limit Internet access to (and bulk distribution of) electronic court records, except for the calendar, register of actions, and index. (Cal. Rules of Court, rule 2.503, subds. (b), (f) & (g); but see *id.,* rule 2.503, subd. (f) [exception to prohibition on internet access to criminal case files in which public interest is extraordinary].) These limitations are designed to prevent courts from distributing their records in a manner that permits the compilation of "personal information culled from any document, paper, or exhibit filed in a lawsuit." (Advisory Com. com., Cal. Rules of Court, rule 2.503, subds. (f), (g).) Otherwise, "[t]his type of aggregate information may be exploited for commercial or other purposes unrelated to the operations of the courts, at the expense of privacy rights of individuals." (*Ibid.*)

The salary information sought by the Newspapers in the present case, in contrast to the type of information addressed in *Westbrook, Reporters Committee,* and the California Rules of Court, is not private information that happens to be collected in the records of a public entity. Rather, it is information regarding an aspect of government operations, the disclosure of which contributes to the public's understanding and oversight of those operations by allowing interested parties to monitor the expenditure of public funds. The disclosure of such information under the Act does not violate the right of privacy protected by the California Constitution.

## C.

As to employees who are peace officers, the Police Officers Association contends that Penal Code section 832.7 bars disclosure of the amount of

an officer's salary. The Act exempts from disclosure any records "the disclosure of which is exempted or prohibited pursuant to federal or state law." (Gov. Code § 6254, subd. (k).) Penal Code section 832.7 provides that "[p]eace officer . . . personnel records . . . , or information obtained from these records, are confidential . . . ." Because peace officer personnel records and information obtained from such records are made confidential by Penal Code section 832.7, they are exempt from disclosure under Government Code section 6254, subdivision (k). (*Commission on Peace Officer Standards*, *supra*, 42 Cal.4th at p. 286; *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1284–1286 [48 Cal.Rptr.3d 183, 141 P.3d 288]; § 6276.34.)

The phrase "personnel records" is defined in Penal Code section 832.8 to include "any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following: [¶] (a) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information. [¶] (b) Medical history. [¶] (c) Election of employee benefits. [¶] (d) Employee advancement, appraisal, or discipline. [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties. [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy." The Police Officers Association contends that salary information constitutes "personal data" under Penal Code section 832.8, subdivision (a). It argues that salary is "personal" because it relates to the individual and because most persons view their salary as a private matter. We disagree.

We begin with the ordinary meaning of the word in question. " 'Personal' generally is defined to mean 'of or relating to a particular person.' (Webster's 3d New Internat. Dict. (2002) p. 1686; American Heritage Dict. (4th ed. 2000) p. 1311.) The word 'personal,' however, also carries a connotation of 'private,' meaning 'peculiar or proper to private concerns,' 'not public or general' (Webster's 3d New Internat. Dict., *supra*, at p. 1686), or '[c]oncerning a particular person and his or her private business, interests, or activities; intimate' (American Heritage Dict., *supra*, at p. 1311)." (*Commission on Peace Officer Standards*, *supra*, 42 Cal.4th at p. 296 [names of peace officers are not personal information within the meaning of Pen. Code, § 832.8, subd. (a)].) A public employee's salary relates to a particular person, but, as discussed above, it is a matter of public interest and not primarily a matter of the individual's private business.

Furthermore, considering the language of Penal Code section 832.8, subdivision (a) as a whole, we conclude that the Legislature did not intend the words "personal data" to carry their broadest possible meaning, encompassing any and all information related to a particular officer. Because

subdivision (a) includes a general term—"personal data"—followed by a nonexhaustive list of specific examples—"marital status, family members, educational and employment history, home addresses"—the principle of *ejusdem generis* provides guidance in discerning the Legislature's intent. "*Ejusdem generis* applies whether specific words follow general words in a statute or vice versa. In either event, the general term or category is 'restricted to those things that are similar to those which are enumerated specifically.' " (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160, fn. 7 [278 Cal.Rptr. 614, 805 P.2d 873].) "The canon presumes that if the Legislature intends a general word to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of things since those descriptions then would be surplusage." (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141 [96 Cal.Rptr.2d 485, 999 P.2d 718]; see also Civ. Code, § 3534 ["Particular expressions qualify those which are general"]; *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 46 [276 Cal.Rptr. 114, 801 P.2d 357] [statute authorizing commission to take "such action" as it believes will effectuate the purposes of the California Fair Employment and Housing Act (§ 12900 et seq.), "including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to membership in any respondent labor organization," does not authorize commission to award compensatory damages]; *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 330–331 [158 Cal.Rptr. 370, 599 P.2d 676] [statute's reference to " 'conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a labor dispute exists, or other similar unlawful activity' " does not apply to peaceful picketing, which, unlike the listed examples, "does not involve violence or substantially impair the rights of others"].)

The examples of "personal data" listed in Penal Code section 832.8, subdivision (a) do not include information, such as salary, arising from the officer's employment with the agency that maintains his or her personnel file. "Rather, they are the types of personal information that commonly are supplied by an employee to his or her employer, either during the application process or upon employment." (*Commission on Peace Officer Standards, supra,* 42 Cal.4th at p. 294, fn. omitted; cf. *Garden Grove Police Department v. Superior Court of Orange County* (2001) 89 Cal.App.4th 430, 434 [107 Cal.Rptr.2d 642] [birth date of peace officer is "personal data" under Pen. Code, § 832.8, subd. (a)].) In contrast, categories of information that arise out of the employment relationship—employee advancement, appraisal, or discipline, and complaints—are listed separately, in subdivisions (d) and (e) of Penal Code section 832.8. Had the Legislature intended the word "personal" to be employed in its broadest sense, the listing of examples in

subdivision (a) would have been unnecessary; indeed, there would have been no need to include items (b) through (e), each of which relates to the individual officer.

In view of the foregoing history and widespread practice of disclosure of public salary information, had the Legislature intended Penal Code section 832.7 to change the law in that respect we would expect to see specific language to that effect in the statute. The Legislature easily could have added "salary" to the list of personnel records set forth in Penal Code section 832.8. Indeed, the Legislature's inclusion of one form of compensation—"election of employee benefits"—is a strong indication that the omission of "salary" was deliberate. Ordinarily, the enumeration of one item in a statute implies that the Legislature intended to exclude others. (*People v. Guzman* (2005) 35 Cal.4th 577, 588 [25 Cal.Rptr.3d 761, 107 P.3d 860].) Although this principle is not applied if the result would be contrary to legislative intent or when no manifest reason appears for excluding one matter and including another (see *People v. Anzalone* (1999) 19 Cal.4th 1074, 1079 [81 Cal.Rptr.2d 315, 969 P.2d 160]; *Estate of Banerjee* (1978) 21 Cal.3d 527, 539, fn. 10 [147 Cal.Rptr. 157, 580 P.2d 657]), in the present context there is an obvious rationale for the Legislature's decision to include election of benefits but not salary as part of a peace officer's confidential personnel record. Absent unusual circumstances, an employee's selection of benefits—such as the type of medical insurance, the number of family members covered, and the choice whether to obtain life or disability insurance—reveals information concerning the individual's personal life and financial decisions but little, if anything, about the operations of the government agency that would not be revealed by making public the types of benefits offered generally by the agency to its employees. The amount of salary paid to a particular individual, on the other hand, does provide information concerning the governmental agency in which the public has a legitimate and traditionally recognized interest.

The Police Officers Association alternatively contends that peace officers' salary information is "obtained from" information in personnel records. In support, the Police Officers Association observes that (1) the City of Oakland employs a merit-based compensation system, and the amount of salary paid is based on an appraisal of the officer's performance; (2) education, training, and special abilities such as bilingualism also can result in an increase in compensation; and (3) the payment of overtime wages is based on timesheets, which assertedly also are protected personnel records (see *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, fn. 5 [75 Cal.Rptr.2d 27]). Because information in a personnel file is used to establish a peace officer's rate of earnings and, thereby, to calculate his or her salary rate, the Police Officers Association contends that salary information is "obtained from" the personnel file.

The Police Officers Association's proposed interpretation of the phrase "obtained from" is strained. In its ordinary sense, to *obtain* information means to come into possession of it. (See Webster's 3d New Internat. Dict., *supra*, at p. 1589.) The phrase "information obtained from personnel files" is most reasonably read to encompass information that was acquired from a personnel file maintained by the employer. Thus, Penal Code sections 832.7 and 832.8 do not mandate that city payroll records reflecting peace officer salary information be excluded from disclosure merely because some of the facts relied upon in determining the amount of salary may be recorded in the agency's personnel files.

Amicus curiae Operating Engineers Local Union No. 3 argues that peace officers' salary information falls under subdivision (f) of Penal Code section 832.8, which includes "[a]ny other information the disclosure of which would constitute an unwarranted invasion of personal privacy." We reject the argument for the same reasons that led us to conclude above that the disclosure of public-employee salary information does not constitute an "unwarranted invasion of personal privacy" under the Act. (§ 6254, subd. (c).) In this context, we reject the notion that peace officers in general have a greater privacy interest in the amount of their salaries than that possessed by other public employees, and we observe that the public interest in disclosure is equally strong as between peace officers and other public employees. As noted above, individual peace officers, such as those working undercover, may have a legitimate interest in maintaining their anonymity, and that interest would warrant exempting their names from disclosure under the Act. This circumstance, however, does not support the conclusion that peace officers as a general category have a privacy interest in their identity sufficient to render salary records confidential under Penal Code section 832.8, subdivision (f) whenever those records include individually identified officers. (See *Commission on Peace Officer Standards*, *supra*, 42 Cal.4th at p. 301.)

We disagree with the contrary conclusion reached in *City of Los Angeles*, *supra*, 111 Cal.App.4th 883. In that case, a peace officer's wife subpoenaed her husband's payroll records in a marital dissolution proceeding, requesting information concerning all sums paid to him for any reason, records of his interest in a retirement plan, savings plan, or stock plan, any interest in any insurance plan or program, and any sums held in a savings plan, credit union, deferred compensation plan, or elsewhere. (*Id.* at p. 886.) The husband challenged the subpoena, claiming the records were confidential peace officer personnel records pursuant to Penal Code sections 832.7 and 832.8 and therefore could be disclosed only upon a showing of good cause pursuant to the procedures established in Evidence Code sections 1043 and 1045. The Court of Appeal in *City of Los Angeles* agreed that a peace officer's payroll records are "personnel records" as defined in Penal Code section 832.8, but held that the spouse of a peace officer is not required, in a marital dissolution

proceeding, to comply with those Evidence Code sections in order to obtain such information, because "peace officers owe their spouses the same fiduciary duty to reveal financial information as any other citizen of this state." (*City of Los Angeles*, at p. 885.)

The appellate court in *City of Los Angeles* concluded that the records at issue came within the definition of peace officer personnel records, because they constituted "information the disclosure of which would constitute an unwarranted invasion of personal privacy." (Pen. Code, § 832.8, subd. (f).) The court stated: "Payroll information is personal. Ask any ordinary reasonable person if he or she would want their payroll information routinely disclosed to parties involved in litigation and one would hear a resounding, 'No.' [Citation.] Even though the pay scale of public employees is generally a matter of public record, it is quite a different thing to know with precision another person's salary, selection of benefits, and potential retirement income. Few records are deemed more personal. Of all records kept by employers, it is the disclosure of payroll records that would constitute one of the greatest 'unwarranted invasions of personal privacy.' " (*City of Los Angeles, supra,* 111 Cal.App.4th at p. 892.)

Because *City of Los Angeles* ultimately upheld the subpoena of the officer's financial records, the foregoing comments in that opinion are dicta. In addition, the records at issue in that case encompassed far more than the peace officer's salary; they included information concerning his selection of benefits, insurance plans, and investments. Because such records reveal information related to the individual's personal financial decisions but little, if anything, about the operations of the employing entity, the appellate court reasonably could conclude that their disclosure would constitute an unwarranted invasion of personal privacy. The same cannot be said regarding the amount of a public employee's salary. The appellate court in *City of Los Angeles* did not consider the long-standing and widespread practice of disclosing government salary expenditures and did not address the question of whether any invasion of privacy resulting from the disclosure of such information might be warranted in light of the public interest in knowing the salary expenditures of government entities. Accordingly, we do not consider *City of Los Angeles v. Superior Court, supra,* 111 Cal.App.4th 883 persuasive and, to the extent it is inconsistent with this opinion, it is disapproved.

The Police Officers Association urges us to conclude that even if salary is not included within any of the categories of information enumerated in Penal Code section 832.8, that statute nevertheless renders confidential not only the types of information specified, but also any information "related to" the types of information enumerated in section 832.8. The Police Officers Association relies upon language in the statute defining "personnel records" to include

"any file maintained under that individual's name by his or her employing agency and containing records relating to" the enumerated items. Specifically, the Police Officers Association argues, salary information is confidential because it is related to matters listed in the statute such as benefits (Pen. Code, § 832.8, subd. (c)) and employee performance (*id.*, subd. (d)).

We agree with the Court of Appeal below that "this reading of the statute is demonstrably overbroad. It would make confidential not only the kinds of information specified by the Legislature, but also *any* information from *any* file containing *any* item 'relating to' confidential information. We do not believe the Legislature intended to paint with so broad a brush. The term 'records relating' to the kinds of information specified in Penal Code section 832.8 is more reasonably understood as a reference to records that actually reflect the enumerated items." Records of salary expenditures do not reflect any of the items enumerated in the statute. Thus, Penal Code sections 832.7 and 832.8 do not mandate that peace officer salary information be excluded from disclosure under the Act.

### III.

For the reasons stated above, the judgment of the Court of Appeal is affirmed.

Werdegar, J., Moreno, J., and Kriegler, J.,* concurred.

**KENNARD, J.,** Concurring and Dissenting.—The majority holds that the names and salaries of public employees are records that are subject to disclosure under the California Public Records Act. (Gov. Code, § 6250 et seq.) I agree. And I agree with the majority that public employees serving as peace officers have no statutory right to prevent disclosure of their names and salaries; but unlike the majority I would simply rely on the plain language of Penal Code sections 832.7 and 832.8 in reaching that conclusion.

### I

The scope of confidentiality accorded a peace officer's personal information is properly determined by construing two statutory schemes as well as certain provisions of our state Constitution. I briefly discuss the pertinent law below.

In 1968, the Legislature enacted the California Public Records Act (Gov. Code, § 6250 et seq.), a statutory scheme affirming every Californian's

---

*Associate Justice, Court of Appeal, Second Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

fundamental right of "access to information concerning the conduct of the people's business." (Gov. Code, § 6250, added by Stats. 1968, ch. 1473, § 39, pp. 2945, 2946.) But public access is not unlimited. The act does not require disclosure of records that are "exempted or prohibited pursuant to . . . state law." (Gov. Code, § 6254, subd. (k), added by Stats. 1968, ch. 1473, § 39, pp. 2945, 2947; see also § 6254, subd. (c) [exempting from disclosure "[p]ersonnel . . . or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy"], added by Stats. 1968, ch. 1473, § 39, pp. 2945, 2946.)

A decade later, in 1978, the Legislature enacted Penal Code sections 832.7 and 832.8, as part of a statutory scheme mandating confidentiality of peace officer personnel records. (Added by Stats. 1978, ch. 630, §§ 5, 6, p. 2083.) Peace officer "personnel records" made confidential by subdivision (a) of Penal Code section 832.7 are defined in a companion statute, section 832.8. (Pen. Code, § 832.8, subds. (a)–(e), added by Stats. 1978, ch. 630, § 6, p. 2083, amended by Stats. 1990, ch. 264, § 1, p. 1535.) Subdivision (a) of Penal Code section 832.8 defines a personnel record as any file kept by the employing agency under the name of the officer and containing records relating to "[p]ersonal data, including marital status, family members, educational and employment history, home addresses, or other similar information."

Thereafter, in November 2004, the voters, through the power of initiative, passed Proposition 59, which amended the California Constitution to affirm the "right of access to information concerning the conduct of the people's business." (Cal. Const., art. I, § 3, subd. (b)(1).) Added to the state Constitution was this provision: "Nothing in this subdivision . . . affects the construction of any statute . . . to the extent that it protects [the state Constitution's] right to privacy, including any statutory procedures governing discovery or disclosure of information concerning the official performance or professional qualifications of a peace officer." (Cal. Const., art. I, § 3, subd. (b)(3).) The initiative also directed: "A statute, . . . including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(2).)

## II

As I stated at the outset, I have no quarrel with the majority's reasoning and its conclusion that the California Public Records Act does not shield from disclosure the salaries paid to named public employees. I also agree with the majority that such disclosure applies to peace officers as well. But unlike the majority I would reach the latter conclusion based on the plain language of

Penal Code sections 832.7 and 832.8, which govern the confidentiality of peace officer personnel records.

The majority reasons that disclosing the salaries of named public employees is permissible because public employees have no reasonable expectation of privacy as to their salaries in light of article I, section 1 of the California Constitution. (Maj. opn., *ante*, at p. 338.) In contrast, the majority observes, peace officers do have privacy protections created by statute.

Penal Code section 832.7, subdivision (a), makes confidential the "personnel records" of peace officers. Subdivision (a) of Penal Code section 832.8 states that files containing "[p]ersonal data, including marital status, family members, educational and employment history, home addresses, or similar information" are personnel records. Responding to a claim that peace officer salaries fall within that provision's definition of "personal data," the majority concludes that the definition pertains to employees as they come to the job. (Maj. opn., *ante*, at p. 342.) That is, salary does *not* fall within "the types of personal information that commonly are supplied by an employee to his or her employer, either during the application process or upon employment." (*Commission on Peace Officer Standards and Training v. Superior Court* (2007) 42 Cal.4th 278, 294 [64 Cal.Rptr.3d 661, 165 P.3d 462], fn. omitted.) In contrast, the majority observes, the salary being paid to a peace officer relates to current rather than prior employment. (Maj. opn., *ante*, at pp. 342–343.) My analysis differs.

I would simply follow the mandate of the initiative the voters passed in 2004 amending the California Constitution to, among other things, direct courts to construe narrowly any statute *limiting* the people's right of access to public records. (Cal. Const., art. I, § 3, subd. (b)(2).) Penal Code sections 832.7 and 832.8 do limit public access to peace officer personnel records. But they are silent on the question of peace officer salaries, and they do not make officer names confidential. Therefore, an officer's salary is not exempt from disclosure under the California Public Records Act. (Gov. Code, §§ 6253, subd. (b), 6254, subd. (k).) And the public interest in disclosure of a named officer's salary is not clearly outweighed by any public interest in withholding disclosure. (Gov. Code, § 6255, subd. (a).) Accordingly, the annual pay of peace officers is subject to public disclosure.

With respect to disclosure of peace officer names, I find nothing in Penal Code section 832.8 that would bring that information within the category of "personal data" deemed confidential under that section; nor do I find any statutory provision exempting such information from public disclosure. Nondisclosure of peace officer names is permissible only when the public interest in withholding disclosure "clearly" outweighs the public interest in disclosure. (Gov. Code, § 6255, subd. (a).) I agree with the majority that the public

interest exception to disclosure may apply to certain undercover officers, but that, as a general rule, peace officers do not have a privacy interest in the confidentiality of their names that outweighs the public interest in disclosing the names. (Maj. opn., *ante*, at p. 344.)

**BAXTER, J.,** Concurring and Dissenting.—Except as to peace officers, I agree with the majority that the names and salaries of public employees earning $100,000 or more per year are not exempt from public disclosure under the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.).

With regard to peace officers, I also agree with the majority's conclusion that the salaries of peace officers earning $100,000 or more per year, as a general matter, are not exempt from public disclosure under the CPRA. However, I have joined Justice Chin's dissenting opinion in *Commission on Peace Officer Standards and Training v. Superior Court* (2007) 42 Cal.4th 278, 306 [64 Cal.Rptr.3d 661, 165 P.3d 462] (dis. opn. of Chin, J.), which, contrary to the majority view in that case, recognizes that peace officers' names themselves fall into the category of confidential "[p]ersonal data," within the meaning of Penal Code section 832.8, subdivision (a), when the names are recorded in peace officer personnel records.[1] Accordingly, I agree with Justice Chin here that where a request is made for disclosure of peace officers' names in connection with a request for disclosure of peace officer salary information, "names may not be disclosed to the extent the source of that information is a 'file maintained under [the peace officer's] name by his or her employing agency.' (Pen. Code, § 832.8.)" (Conc. & dis. opn. of Chin, J., *post*, at p. 350.)

**CHIN, J.,** Concurring and Dissenting.—Except as to peace officers, I agree with the majority's conclusion that names and salaries of public employees earning $100,000 or more per year are not exempt from public disclosure under the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.).[1] As explained below, however, my analysis of this question is somewhat different from the majority's and I do not endorse all of the majority's reasoning. Regarding peace officers, I agree with the majority's conclusion that salary information is not exempt from disclosure. However, as explained in my dissenting opinion in *Commission on Peace Officer Standards and Training v. Superior Court* (2007) 42 Cal.4th 278, 306 [64 Cal.Rptr.3d 661, 165 P.3d 462] (dis. opn. of Chin, J.), I believe that peace officers' names are "[p]ersonal data"

---

[1] Penal Code sections 832.7 and 832.8 are part of the statutory scheme mandating confidentiality of peace officer personnel records. (Stats. 1978, ch. 630, §§ 5, 6, p. 2083.) Peace officer "personnel records" made confidential by subdivision (a) of Penal Code section 832.7 are defined in subdivision (a) of section 832.8, the companion statute, as any file kept by the employing agency under the name of the officer and containing records relating to "[p]ersonal data, including marital status, family members, educational and employment history, home addresses, or other similar information."

[1] All further unlabeled statutory references are to the Government Code.

within the meaning of Penal Code section 832.8, subdivision (a). Thus, I would hold that where, as here, a request is made for disclosure of names linked to salary, officers' names may not be disclosed to the extent the source of that information is a "file maintained under [the peace officer's] name by his or her employing agency." (Pen. Code, § 832.8.) I dissent to the extent the majority holds otherwise.

I. The Names and Salaries of Public Employees Other Than Peace Officers Are Not Exempt From Disclosure.

The CPRA makes all "[p]ublic records . . . open to [public] inspection . . . except as" expressly provided by statute. (§ 6253, subd. (a).) Because, as the parties agree, the records in question are "public records" within the meaning of the CPRA (§ 6254, subd. (d)), they are subject to inspection unless some statutory exception applies. As the majority explains (maj. opn., *ante*, at p. 329), the exception principally at issue here is found in section 6254, subdivision (c), which provides that nothing in the CPRA requires disclosure of "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy."

In the 40 years since the Legislature enacted this CPRA disclosure exception, we have said little about it. However, that fact does not leave us without significant guidance. The federal Freedom of Information Act (FOIA) (5 U.S.C. § 552) contains an almost identical disclosure exception. Known as exemption 6, the FOIA exception provides for nondisclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." (5 U.S.C. § 552(b)(6).) "Because the FOIA provided a model for the [CPRA], and because they have a common purpose," they " 'should receive a parallel construction.' [Citation.] Therefore, federal decisions under the FOIA may be used to construe the [CPRA]. [Citations.]" (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1350 [283 Cal.Rptr. 893, 813 P.2d 240].)

· Giving the CPRA a construction parallel to the FOIA's, I first conclude that the records at issue constitute "[p]ersonnel . . . or similar files" under section 6254, subdivision (c). Based on evidence of congressional intent, the high court has broadly interpreted the scope of the term "personnel and medical files and similar files" in exemption 6 (5 U.S.C. § 552, subd. (b)(6)) to " 'cover [all] detailed Government records on an individual [that] can be identified as applying to that individual.' [Citation.]" (*Department of State v. Washington Post Co.* (1982) 456 U.S. 595, 602 [72 L.Ed.2d 358, 102 S.Ct. 1957] (*Washington Post*).) The records sought here—the name of each employee of the City of Oakland (the City) who earned at least $100,000 in fiscal year 2003–2004 linked to the employee's gross salary—clearly qualify

under that definition. I see no basis for reaching a different conclusion in applying section 6254, subdivision (c). Indeed, in seeking disclosure, Contra Costa Newspapers, Inc. (the Newspapers), has never argued that the requested records are not "[p]ersonnel . . . or similar files" under section 6254, subdivision (c); on the contrary, the Newspapers' assertion in its brief that the trial court "employed the proper 'statutory balancing analysis' " implicitly concedes that the requested records are "[p]ersonnel . . . or similar files" to which the balancing test applies. (§ 6254, subd. (c).) For the reasons stated above, I agree with this view, and thus will now proceed to the balancing the statute requires.[2]

Like the high court in applying exemption 6, I begin the balancing inquiry under section 6254, subdivision (c), by considering "the privacy interest at stake." (*Department of State v. Ray* (1991) 502 U.S. 164, 175 [116 L.Ed.2d 526, 112 S.Ct. 541] (*Ray*).) As the majority correctly notes (maj. opn., *ante*, at p. 330), almost 40 years ago, we held that "the protection of one's personal financial affairs . . . against compulsory public disclosure is an aspect of the [protected] zone of privacy . . . ." (*City of Carmel-by-the-Sea v. Young* (1970) 2 Cal.3d 259, 268 [85 Cal.Rptr. 1, 466 P.2d 225].) A person's salary generally falls within this protected category of information. (See *Moskowitz v. Superior Court* (1982) 137 Cal.App.3d 313 [187 Cal.Rptr. 4].) As we have explained, "the newspaper publication of a [person's] assets . . . can be expected to bring unwanted solicitation from a variety of [salespeople] and others, could well encourage harassment lawsuits or demands of like nature, and could expose the [person] . . . to various criminal elements in our society." (*City of Carmel, supra,* 2 Cal.3d at p. 270.) The high court, in applying exemption 6, has similarly recognized "the individual privacy interest" at stake when disclosed information makes a person an inviting target of "commercial advertisers and solicitors."[3] (*Department of Defense v. FLRA* (1994) 510 U.S. 487, 501 [127 L.Ed.2d 325, 114 S.Ct. 1006] (*FLRA*); see also *Painting Industry of Hawaii v. Dept. of Air Force* (9th Cir. 1994) 26 F.3d 1479, 1483 ["invasion of privacy . . . can result from release of a list of names and addresses coupled with a characteristic susceptible to commercial exploitation"]; *National Ass'n of Retired Federal Emp. v. Horner* (D.C. Cir.

---

[2] The majority merely assumes, without deciding, that the records are "[p]ersonnel . . . or similar files" under section 6254, subdivision (c). (Maj. opn., *ante*, at p. 329.)

[3] The majority acknowledges the "interest" of public employees "in avoiding unwanted solicitations or marketing efforts," but finds that interest "comparatively weak" absent disclosure of other contact information, such as home address or telephone number. (Maj. opn., *ante*, at p. 339.) Given that publicly available databases on the Internet make it easy to link a name to an address or telephone number, I find the absence of disclosure of contact information to be of little, if any, significance. (See *Sheet Metal Workers Local No. 9 v. U.S. Air Force* (10th Cir. 1995) 63 F.3d 994, 998 ["redaction of addresses alone, leaving names on the payroll records and thereby directly linking detailed financial information about workers . . . to those workers, does not materially lessen the substantial privacy interest involved"].)

1989) 879 F.2d 873, 878 ["there is a substantial probability that the disclosure will lead to the threatened invasion: one need only assume that business people will not overlook an opportunity to get cheaply from the Government what otherwise comes dearly, a list of qualified prospects for all the special goods, services, and causes likely to appeal to financially secure retirees"]; *Aronson v. U.S. Dept. of Housing & Urban Dev.* (1st Cir. 1987) 822 F.2d 182, 186 ["[w]hen it becomes a matter of public knowledge that someone is owed a substantial sum of money, that individual may become a target for those who would like to secure a share of that sum by means scrupulous or otherwise"].)

I find the majority's analysis of the privacy interest at stake unpersuasive in several respects. To begin with, for the most part, the majority asks not whether there are privacy interests at stake, but whether a public employee's "expectation of privacy" is "reasonable." (Maj. opn., *ante*, at p. 331.) The two questions are not the same; notably, the high court, in applying both exemption 6 and another FOIA exemption that looks to whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy" (5 U.S.C. § 552(b)(7)(C)), has consistently considered only the nature of the privacy interest at stake, and has never considered whether a reasonable expectation of privacy exists.[4] (*National Archives and Records Admin. v. Favish* (2004) 541 U.S. 157, 160 [158 L.Ed.2d 319, 124 S.Ct. 1570] [public interest must be balanced against any "personal privacy interest recognized by the statute"]; *FLRA, supra,* 510 U.S. at p. 497 [analysis requires court to "weigh the privacy interest"]; *Ray, supra,* 502 U.S. at p. 175 [proper to begin analysis "by considering the significance of the privacy interest at stake"]; *Washington Post, supra,* 456 U.S. at pp. 602–603 [remanding for lower court "to consider the effect of disclosure upon . . . privacy interests"]; *Reporters Committee, supra,* 489 U.S. at p. 762 [court must "balance the privacy interest . . . against the public interest in" disclosure]; *Dept. of Air Force v. Rose* (1976) 425 U.S. 352, 381 [48 L.Ed.2d 11, 96 S.Ct. 1592] [discussing "the risk to . . . privacy interests"].)

I also question the majority's conclusion that public employees have *no* reasonable expectation of privacy in their salary information. (Maj. opn.,

---

[4] The majority's "reasonable expectation of privacy" inquiry derives from the test we announced in *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 [26 Cal.Rptr.2d 834, 865 P.2d 633] for determining whether a person's constitutional right of privacy has been violated. (See maj. opn., *ante,* at pp. 330, fn. 3, 331, 338–339.) However, the issue under section 6254, subdivision (c), is not whether disclosure would violate the constitutional right of privacy, but whether it would be "an unwarranted invasion of personal privacy" under section 6254, subdivision (c). (Cf. *U. S. Dept. of Justice v. Reporters Committee* (1989) 489 U.S. 749, 762, fn. 13 [103 L.Ed.2d 774, 109 S.Ct. 1468] (*Reporters Committee*) ["[t]he question of the statutory meaning of privacy under the FOIA is . . . not the same as . . . the question whether an individual's interest in privacy is protected by the Constitution"].)

*ante*, at p. 331.) Nongovernmental employees most certainly have a reasonable expectation of privacy regarding this information and, as we have stated, "[t]he mere status of being employed by the government should not compel a citizen to forfeit his or her fundamental right of privacy. Public employees are not second-class citizens within the ken of the Constitution. [¶] . . . [L]egal distinctions between public and private sector employees that operate to abridge basic rights cannot withstand judicial scrutiny unless justified by a compelling governmental interest. [Citation.] However much public service constitutes a benefit and imposes a duty to uphold the public interest, a public sector employee, like any other citizen, is born with a constitutional right of privacy. . . . A citizen cannot be said to have waived that right in return for the 'privilege' of public employment, or any other public benefit, unless the government demonstrates a compelling need. [Citation.]" (*Long Beach City Employees Assn. v. City of Long Beach* (1986) 41 Cal.3d 937, 951–952 [227 Cal.Rptr. 90, 719 P.2d 660].) Moreover, although the majority cites evidence and authorities supporting the view that disclosure of the salaries of public employees is widespread (maj. opn., *ante*, at pp. 331–332), there is published authority in California and elsewhere recognizing that public employees have at least some reasonable expectation of privacy in their personnel records, including salary information.[5] Notably, in a decision involving exemption 6, the high court held that the "privacy interest" of federal employees in nondisclosure of their home addresses "outweigh[ed] the relevant public interest" in disclosure, even though that information was "publicly available through sources such as telephone directories and voter registration lists . . . ." (*FLRA, supra*, 510 U.S. at p. 500.)

Ultimately, I need not resolve this question because I agree with the majority that "any cognizable [privacy] interest . . . public employees may

---

[5] *People v. Mooc* (2001) 26 Cal.4th 1216, 1220 [114 Cal.Rptr.2d 482, 36 P.3d 21] (statutory scheme recognizes a peace officer's "legitimate expectation of privacy in his or her personnel records"); *BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 756 [49 Cal.Rptr.3d 519] ("[p]ublic employees have a legally protected interest in their personnel files"); *Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 821 [26 Cal.Rptr.3d 92]; *Teamsters Local 856 v. Priceless, LLC* (2003) 112 Cal.App.4th 1500, 1516 [5 Cal.Rptr.3d 847] (public employees have "a legally protected privacy interest" in their personnel files, including "salary details"); *City of Los Angeles v. Superior Court* (2003) 111 Cal.App.4th 883, 892 [3 Cal.Rptr.3d 915] (disclosure of peace officer's payroll records, including his salary, "would constitute one of the greatest 'unwarranted invasions of personal privacy' "); *San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1097 [105 Cal.Rptr.2d 476] ("personnel records . . . are within the scope of the protection provided by the state and federal Constitutions"); *East Bank Cons. Spec. Serv. Fire v. Crossen* (La.Ct.App. 2004) 892 So.2d 666, 670; *Beck v. Department of Justice* (D.C. Cir. 1993) 997 F.2d 1489, 1494 ("A government employee has at least some privacy interest in his own employment records . . ."); *Campbell v. United States Civil Service Commission* (10th Cir. 1976) 539 F.2d 58, 62 (disclosure of federal employees' salary "would be a serious invasion of privacy"); *Columbia Packing Co., Inc. v. U. S. Dept. of Agri.* (D.C. Mass. 1976) 417 F.Supp. 651, 655 (recognizing "privacy interest in nondisclosure" of federal employees' "earnings statements reflecting" their "remuneration").

have" is insufficient to justify nondisclosure. (Maj. opn., *ante*, at p. 333.) Section 6254, subdivision (c), does not preclude *all* "invasion[s] of personal privacy," only "unwarranted" ones. Borrowing again from the high court's discussion of exemption 6, whether an invasion of privacy would be "unwarranted" within the meaning of section 6254, subdivision (c), depends on "the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.' [Citation.]" (*FLRA, supra,* 510 U.S. at p. 497.) "[T]he public has a legitimate interest in knowing how public funds are spent" (*Copley Press, Inc. v. Superior Court* (1998) 63 Cal.App.4th 367, 376 [74 Cal.Rptr.2d 69]), and the names and compensation paid to public employees directly relate to that issue. Disclosure of this information would directly reflect on the City's management of public funds and its employees' performance of public duties. I therefore conclude that any invasion of privacy from disclosure of this information would not be "unwarranted" within the meaning of section 6254, subdivision (c), and that the information therefore is not exempt from disclosure under that provision.

Like the majority, but for a different reason, I reject the view that balancing under section 6254, subdivision (c), must be done on a case-by-case basis, taking into account the particular privacy interests of each public employee. (Maj. opn., *ante,* at pp. 336–338.) As the high court has explained in construing the FOIA, "categorical decisions" regarding disclosure of records "may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." (*Reporters Committee, supra,* 489 U.S. at p. 776.) Regarding salary information of public employees, for the reasons stated above, the balance characteristically tips in the direction of disclosure. Thus, as to this information, case-by-case balancing under section 6254, subdivision (c), is unnecessary.

The claim that disclosure of public employees' names linked to their salaries violates the state constitutional right to privacy (Cal. Const., art. I, § 1) fails for similar reasons. The state constitutional right to privacy is not absolute; "it is subject to a balancing of interests." " 'Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest.' [Citation.]." (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 961 [56 Cal.Rptr.3d 477, 154 P.3d 1003].) For the reasons discussed above, I conclude that any invasion of a public employee's privacy interest that would result from disclosure of the requested information would be justified by the public's competing interest in knowing what the government is up to and how the government is spending

public funds.[6] Thus, as to public employees other than peace officers, I agree with the majority's holding that the names and salaries of public employees earning $100,000 or more per year are not exempt from disclosure under the CPRA.

## II. THE NAMES AND SALARIES OF PEACE OFFICERS.

The Oakland Police Officers Association (Police Officers Association), which intervened in this action, does not object to disclosure of the actual salary paid to each peace officer, so long as the officers are identified only by job title. It does, however, object to disclosures that link the actual salary paid to the officer's name. It asserts that the latter disclosure would violate Penal Code section 832.7, subdivision (a), which provides in relevant part that "[p]eace officer . . . personnel records . . . or information obtained from these records, are confidential and shall not be disclosed" except as otherwise provided by statute. According to the Police Officers Association, individually identifiable salary information constitutes either a confidential "personnel record[]" or "information obtained from" personnel records within the meaning of Penal Code section 832.7, subdivision (a), by virtue of Penal Code section 832.8. The latter defines the term "personnel records" in Penal Code section 832.7, subdivision (a), as "any file maintained under [a peace officer's] name by his or her employing agency and containing records relating to any of the following: [¶] (a) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information. [¶] (b) Medical history. [¶] (c) Election of employee benefits. [¶] (d) Employee advancement, appraisal, or discipline. [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties. [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy."[7] (Pen. Code, § 832.8.)

In making its argument, the Police Officers Association first emphasizes that an officer's actual pay is based on the following information that is expressly included within the term "personnel records" in Penal Code section 832.7: "educational and employment history" (id., § 832.8, subd. (a)), and "[e]mployee advancement" and "appraisal" (id., § 832.8, subd. (d)). Because of this fact, the Police Officers Association asserts, an officer's actual pay constitutes "information obtained" from personnel records within the meaning

---

[6] In light of this conclusion, I need not decide whether public employees have a reasonable expectation of privacy regarding their specific salaries.

[7] Penal Code sections 832.7 and 832.8 establish a disclosure exception under the CPRA by virtue of Government Code sections 6254, subdivision (k), and 6276.34. (See *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1283 [48 Cal.Rptr.3d 183, 141 P.3d 288].)

of Penal Code section 832.7. It also qualifies independently as a confidential personnel record under Penal Code section 832.7, subdivision (a), because it is, in the words of Penal Code section 832.8, "relat[ed] to" the information specified elsewhere in the section. I agree with the majority's analysis and rejection of these arguments. (Maj. opn., *ante*, at pp. 343–344, 345–346.)

The Police Officers Association also argues that individualized salary information qualifies for protection because it "constitutes '[p]ersonal data' or 'other similar information' under Penal Code section 832.8[, subdivision] (a)." It asserts that anything "unique to the person . . . qualif[ies]" as "[p]ersonal data" under Penal Code section 832.8, subdivision (a), and that a particular officer's salary is unique because it depends on the officer's years of service, performance, education and specialties.

Like the majority, I reject this argument. As the majority explains, because all of the information specified in subdivisions (b) through (e) of Penal Code section 832.8 also is unique to the individual officer, those subdivisions would be unnecessary were we to construe the term "[p]ersonal data" in subdivision (a) to include everything that is unique to the person. (Maj. opn., *ante*, at p. 342.) Well-established canons of statutory construction preclude us from interpreting statutory language so as to render other parts of the statute unnecessary. (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [41 Cal.Rptr.2d 220, 895 P.2d 56].) As the majority also explains, that the Legislature expressly specified another form of compensation— "[e]lection of employee benefits"—in a separate subdivision of the statute (Pen. Code, § 832.8, subd. (c)) counsels against adopting an interpretation of the term "[p]ersonal data" in subdivision (a) that includes an officer's salary. (Maj. opn., *ante*, at pp. 342–343.) For these reasons, I agree that salary information does not constitute "[p]ersonal data" within the meaning of section 832.8, subdivision (a).[8]

Amicus curiae Operating Engineers Local Union No. 3 argues that individualized salary information regarding peace officers qualifies for protection under subdivision (f) of Penal Code section 832.8, because disclosure of this information "would constitute an unwarranted invasion of personal privacy." I reject this argument because, as explained above in connection with Government Code section 6254, subdivision (c), I do not believe that any invasion of privacy from disclosure of the requested salary information would be unwarranted.

---

[8] Except as expressly noted above, I do not join the majority's analysis of this issue.

Regarding the names of peace officers, as explained in my dissenting opinion in *Commission on Peace Officer Standards and Training v. Superior Court* (2007) 42 Cal.4th 278, 306 [64 Cal.Rptr.3d 661, 165 P.3d 462] (dis. opn. of Chin, J.), I believe that peace officers' names are "[p]ersonal data" within the meaning of Penal Code section 832.8, subdivision (a). Thus, I would hold that where, as here, a request is made for disclosure of names linked to salary, officers' names may not be disclosed to the extent the source of that information is a "file maintained under [the peace officer's] name by his or her employing agency." (Pen. Code, § 832.8.) Where, however, the request identifies officers by name and asks for disclosure of their salaries, Penal Code section 832.7 does not preclude disclosure.