[No. D058962. Fourth Dist., Div. One. June 28, 2011.]

SAN DIEGO COUNTY EMPLOYEES RETIREMENT ASSOCIATION, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CALIFORNIA FOUNDATION FOR FISCAL RESPONSIBILITY et al.,
Real Parties in Interest.

1230

## COUNSEL

Duckor Spradling Metzger & Wynne, Scott L. Metzger, Robert M. Shaughnessy; Crowell & Moring, Steven P. Rice and Ethan P. Schulman for Petitioner.

James G. Line for Sacramento County Employees' Retirement System as Amicus Curiae on behalf of Petitioner.

Law Office of Michael A. Conger and Michael A. Conger for California County Retired Employees Association and Retired Employees of San Diego County as Amici Curiae on behalf of Petitioner.

Robert S. Van Der Volgen, Jr., Michael D. Herrera and Christine Roseland for Los Angeles County Employees Retirement Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Real Parties in Interest.

Meriem L. Hubbard and Harold E. Johnson for Pacific Legal Foundation and Fullerton Association of Concerned Taxpayers as Amici Curiae on behalf of Real Parties in Interest.

Ram, Olson, Cereghino & Kopczynski and Karl Olson for California Newspaper Publishers Association, McClatchy Newspapers, Bloomberg News, San Diego Union-Tribune, First Amendment Coalition, Los Angeles Times Communications, Gannett Co., Inc., Associated Press, Californians Aware, The Reporters Committee for Freedom of the Press, Freedom Communications, Reuters and Center for Investigative Reporting as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**McCONNELL, P. J.**—San Diego County Employees Retirement Association (SDCERA) seeks a writ of mandate to overturn the trial court's order granting the petition of California Foundation for Fiscal Responsibility (CFFR) and Marcia Fritz[1] under the California Public Records Act (the Act) (Gov. Code, § 6250 et seq.)[2] to compel the disclosure of the names of retirees who in any month in 2010 received $8,333 or more in pension benefits, the pension amounts, and how they were calculated. SDCERA contends the records are statutorily exempt from disclosure, and alternatively, on balance the interests of retirees in privacy outweigh the public's interest in disclosure. In line with the Third District Court of Appeal's recent opinion in *Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440 [125 Cal.Rptr.3d 655] (*SCERS*), we find no error and deny the petition.

---

[1] When appropriate, we refer to CFFR and Fritz together as CFFR.

[2] Further statutory references are also to the Government Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

SDCERA, which administers the retirement system for San Diego County employees, is governed by the County Employees Retirement Law of 1937 (CERL) (§ 31450 et seq.). Annually, SDCERA is required to file with the county auditor's office and the board of supervisors a sworn statement that shows its financial condition and financial transactions for the year. (§ 31597.) SDCERA is also required to "keep records and accounts" on accumulated member contributions and annuity payments to members derived from the contributions. (§ 31599; see § 31457.) SDCERA maintains a Web site on which it publishes annual financial reports and data on pension benefit ranges and the number of retirees in each range. The Web site does not reveal the names of retirees or other identifying information.

CFFR is a nonprofit entity that seeks to educate government decision makers and the public on public employee pension benefit issues. Fritz is the vice-president of CFFR. In July 2010 CFFR asked SDCERA to disclose the names of retirees whose gross monthly pension benefit exceeded $8,333 in any month in 2010, the gross monthly benefit for each of them, the last employing agency, and the worksheet or other record used to calculate the benefit. SDCERA refused to provide the records.

CFFR then filed a petition for writ of mandate in the superior court, seeking an order compelling SDCERA to disclose the records. In opposition, SDCERA argued it is prohibited from disclosing the records under section 6254, subdivision (k), a provision of the Act, and section 31532, a provision of CERL.[3] Section 6254, subdivision (k) exempts from disclosure records protected by state or federal law. Section 31532 provides, "Sworn statements and *individual records of members* shall be confidential and shall not be disclosed . . . ." (Italics added.) In SDCERA's view, the records sought fall within the italicized language.

Alternatively, SDCERA argued that on balance the records are protected under section 6255, subdivision (a), a provision of the Act, because retirees' privacy interests are greater than the public interest in disclosure. SDCERA presented evidence that the majority of top paid retirees strongly object to the disclosure of their names, and expert opinion that the disclosure of their names could expose them to fraudulent activity. SDCERA accused CFFR of

---

[3] We do not discuss other arguments SDCERA raised because they are not at issue in this proceeding.

seeking the names of retirees to post them on the "$100,000 Club" list on its Web site.

In a tentative ruling, the court granted CFFR's petition in part by ordering the disclosure of first names of retirees, but only the first letter of their surnames. At the November 1, 2010 hearing, CFFR argued SDCERA's evidence on potential crime was immaterial because CFFR would not publish the names of county retirees on its "$100,000 Club" list. CFFR also argued that SDCERA's own evidence showed that opportunists can obtain retiree names and financial information from other sources.

The court asked the parties whether it could make a lawful order prohibiting CFFR from publicizing retiree names, and they answered in the affirmative. CFFR acknowledged, however, that it could not guarantee that the names would not become public in some other manner. CFFR pointed out that once it establishes the records are public records, newspapers may seek them as well. The court took the matter under submission.

On November 2, the court issued an order granting CFFR's petition. The court found that while SDCERA submitted substantial evidence of potential harm to retirees, the evidence did not outweigh the public interest in disclosure. The court found that by accepting public employment, retirees have a reduced expectation of privacy in their overall compensation packages. The order compels SDCERA to disclose the full names of retirees and their pension amounts "with the proviso that neither CFFR nor Fritz may publish the surnames of the SDCERA retirees on any internet page or other publicly available site." The order also requires SDCERA to disclose for each retiree a computer-generated document, titled "Disability Retirement Calculation Summary Final," "in redacted form," to "provide CFFR with the information it needs to check for 'unearned service credit, unwarranted reclassifications . . . and excessive pension amounts due to . . . simple miscalculation.' " The order requires SDCERA to redact retiree dates of birth, Social Security numbers, and names of financial institutions and "medical programs."

SDCERA moved for reconsideration under Code of Civil Procedure section 1008. SDCERA argued the Act did not allow for the disclosure of records on the proviso CFFR not publicize them. SDCERA submitted that the court's question during the hearing as to the propriety of such an order took it by surprise, and "SDCERA now understands that the Order is not authorized" by

the Act and "is inconsistent with controlling statutory and case authority which holds that once a particular document has been held to be a public record subject to disclosure under the [Act], it must be made available to any individual who seeks its disclosure."

In a tentative ruling, the court granted the motion for reconsideration but reaffirmed its November 2, 2010 order. After a hearing, the court confirmed its tentative ruling. Judgment and a peremptory writ of mandate were entered on November 30, 2010. The court stayed enforcement pending SDCERA's petition for writ of mandate to this court.

## DISCUSSION

### I

### *Overview of the Act*

The California Supreme Court has explained: "Openness in government is essential to the functioning of a democracy. 'Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process.' [Citation.] In adopting the Act, the Legislature declared that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' (§ 6250.) As the result of an initiative adopted by the voters in 2004, this principle is now enshrined in the state Constitution: 'The people have the right of access to information concerning the conduct of the people's business, and therefore, . . . the writings of public officials and agencies shall be open to public scrutiny.' (Cal. Const., art. I, § 3, subd. (b)(1).)" (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 328–329 [64 Cal.Rptr.3d 693, 165 P.3d 488] (*Local 21*).)

■ In promulgating the Act, the Legislature balanced a person's right to privacy with the right to know about the government's conduct of business. (*New York Times Co. v. Superior Court* (1990) 218 Cal.App.3d 1579, 1584 [268 Cal.Rptr. 21]; § 6250.) "At the heart of the [Act] is the declaration that

'every person has a right to inspect any public record, except as hereafter provided.' (§ 6253, subd. (a).) In other words, all public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 346 [19 Cal.Rptr.2d 882, 852 P.2d 377].)

■ Specific exemptions from disclosure are enumerated in section 6254. For instance, the Act protects the confidentiality of "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." (§ 6254, subd. (c).) In *Local 21, supra*, 42 Cal.4th 319, the court rejected the argument that the names of *active* public employees and their salaries are exempt from disclosure under section 6254, subdivision (c). The court held that even if the records were arguably personnel files within the meaning of the statute, on balance the disclosure did not constitute an unwarranted invasion of personal privacy. (*Local 21*, at pp. 329–330.) The court concluded the public has a strong, well-established interest in public employee salaries, and public employees have no reasonable expectation of privacy on the issue. (*Id.* at pp. 331, 339.)

■ Additionally, as is pertinent here, the Act includes an exemption for "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code pertaining to privilege." (§ 6254, subd. (k).) " '[T]his exemption "is not an independent exemption. It merely incorporates other prohibitions established by law." ' " (*County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1320 [89 Cal.Rptr.3d 374].)

■ Also relevant is section 6255, subdivision (a), which provides: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." The first clause relates to the exemption of section 6254, subdivision (k). The second clause is a "broad catchall exemption" that "contemplates a case-by-case balancing process, with the burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality." (*Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th 1065, 1071 [44 Cal.Rptr.3d 663, 136 P.3d 194].)

II

*Section 31532 Does Not Exempt Disclosure*

SDCERA contends section 6254, subdivision (k) of the Act exempts from disclosure the names of retirees linked to their benefit amounts because the

plain language of section 31532, a provision of CERL, prohibits a county retirement system from disclosing such information. Since 1969, section 31532 has provided: "Sworn statements and *individual records of members* shall be confidential and shall not be disclosed to anyone except insofar as may be necessary for the administration of this chapter or upon order of a court of competent jurisdiction, or upon written authorization by the member." (Italics added.)

SDCERA cites Black's Law Dictionary's definition of the adjective "individual," which is, "Of or relating to a single person or thing, as opposed to a group." (Black's Law Dict. (8th ed. 2005) p. 642.) SDCERA asserts that the "connection of a unique retirement benefit amount to a specific individual name plainly constitutes an individual record of that member. Any person would consider his or her individual retirement allowance to be an individual record and would reasonably expect that such information would be kept confidential by the terms of section 31532."

■ The trial court did not reveal its reasoning on the statutory issue, but it is one of law subject to our independent review. (*Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1596 [107 Cal.Rptr.3d 505].) " 'A court's overriding purpose in construing a statute is to ascertain legislative intent . . . . In interpreting a statute to determine legislative intent, a court looks first to the words of the statute and gives them their usual and ordinary meaning. [Citation.] Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished.' " (*Ibid.*)

■ Section 31532 does not define the term "individual records of members." Contrary to SDCERA's position, the term does not plainly include records a *retirement system creates* for purposes of conducting the governmental function of calculating and paying out monthly pension benefits. An ambiguity exists when statutory language is "susceptible of more than one reasonable interpretation." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].) " 'If the statutory terms are ambiguous, we may examine extrinsic sources, including . . . the legislative history.' " (*County of Santa Clara v. Superior Court, supra*, 170 Cal.App.4th at p. 1333.)

The legislative history of section 31532, however, is sparse and does not resolve the ambiguity.[4] Originally, section 31532 protected only the "sworn statements" of members. (Stats. 1949, ch. 1228, § 11, p. 2161.) In 1957, it

---

[4] The trial court granted SDCERA's request that it take judicial notice of the legislative history of section 31532.

was amended to also protect "individual records of members." (Stats. 1957, ch. 1386, § 2, p. 2719.) At the same time, CERL was amended to authorize a retirement system to provide for periodic examinations of safety officers at county expense. (Stats. 1957, ch. 1386, § 1, p. 2719; § 31527, subd. (f).) Given the timing, the "individual records of members" addition to section 31532 may have been intended to ensure the confidentiality of personal records pertaining to such issues as physical or mental health. The impetus for the amendment, however, is not specified. In 1969, section 31532 was amended to provide that sworn statements and individual records of members could be disclosed on written authorization of the member, to rectify the problem of a county requiring a member to obtain a court order for the release of his or her own records. (Stats. 1969, ch. 239, § 1, pp. 584–585; Assem. Com. on Public Employment and Retirement, Analysis of Assem. Bill No. 835 (1969 Reg. Sess.) Apr. 16, 1969.) The legislative history of section 31532 does not indicate the Legislature intended to exempt records a county retirement system creates to allow it to pay monthly benefits.

CFFR cites a 1977 Attorney General opinion in which the Attorney General concluded that under section 31532 retiree names and benefit amounts are subject to disclosure by a county controller who used the information to issue warrants. (*County Payroll Records as Public Records*, 60 Ops.Cal.Atty.Gen. 110, 111 (1977).) The 1977 opinion cites a 1955 Attorney General opinion (*State Employees' Retirement Act*, 25 Ops.Cal.Atty.Gen. 90 (1955)) based on a parallel provision of the Public Employees' Retirement Law (PERL), former section 20134.[5] The pertinent language of this statute is continued in current section 20230, which provides: "Data filed by any member or beneficiary with the board is confidential, and no *individual record* shall be divulged . . . ." (Italics added.) In the 1955 opinion the Attorney General concluded the roll of member names and benefit amounts created by the retirement system and provided to the controller was not exempt from disclosure by the controller. The opinion explains, "it is a fact that the name of every public officer and employee, as well as the amount of his salary, is a matter of public record. Thus the state-paid income of a retired person is no less open to the public gaze than the income of any active state officer or employee." (*State Employees' Retirement Act, supra*, 25 Ops.Cal.Atty.Gen. at p. 91.)

SDCERA asserts the 1955 and 1977 Attorney General opinions are inapplicable because they concern disclosure by a controller rather than by a

---

[5] PERL (§ 20000 et seq.) "established PERS [(the Public Employees' Retirement System)], a retirement system for employees of the state and participating local public agencies." (*Khan v. Los Angeles City Employees' Retirement System* (2010) 187 Cal.App.4th 98, 107 [113 Cal.Rptr.3d 417].)

retirement system itself. SDCERA submits that retirement systems have a fiduciary duty to keep all retiree information confidential.

In the 1955 opinion, however, the Attorney General concluded that the *roll* of names and benefit amounts created by a retirement system is not an individual record of a member exempt from disclosure. It explains: "Examples of information guarded by section 20134 are addresses of members and beneficiaries, statements as to age and disability, names of relatives and dependents, retirement option elections and similar matters. Utilizing such guarded information, *the Retirement System calculates the monthly payment due each beneficiary. It then makes up and certifies to the Controller a monthly claim, supported by a roll which bears the names of individual payees and the amounts of individual payments. . . . .* The *roll* is used by the Controller as the basis for drawing individual warrants in favor of the individual payees. This *roll is not 'data filed by any member or beneficiary,' nor is it an 'individual record.'* Rather, it is a composite document which is the written act or record of the act of a public officer. [Citation.] Thus the *roll* is outside the limited class of records guarded by section 20134 and within the larger category of public records. In our view, therefore, *the names and amounts shown on the roll are open to public inspection. Consequently, the identical information shown in the Controller's warrant records is also open to inspection by citizens of the State.*" (*State Employees' Retirement Act, supra*, 25 Ops.Cal.Atty.Gen. at p. 91, italics added.)

 SDCERA cites a 1956 Attorney General opinion, which concluded former section 20134 (currently § 20230) exempted from disclosure by what is now known as CalPERS (California's Public Employees' Retirement System) the "amount and detail of calculation of the service or disability retirement allowance payable to a retired person," and related information. (*State Employees' Retirement System*, 27 Ops.Cal.Atty.Gen. 267 (1956).) We decline to follow the 1956 opinion. "While an Attorney General opinion is entitled to our respect and careful consideration, it does not bind this court." (*Watershed Enforcers v. Department of Water Resources* (2010) 185 Cal.App.4th 969, 984, fn. 11 [110 Cal.Rptr.3d 876].) The 1956 opinion is at odds with the 1955 opinion, which explains the roll of names and pension amounts created by a retirement system is not an individual record of a member. Construing the matter narrowly in favor of disclosure, as we must (*County of Santa Clara v. Superior Court, supra*, 170 Cal.App.4th at pp. 1319–1320), we are more persuaded by the reasoning of the 1955 and 1977 opinions. The Act, promulgated after the 1956 opinion, " 'was enacted for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies.' [Citation.] Legislative policy favors disclosure." (*County of Santa Clara v. Superior Court*, at pp. 1319–1320.) In *SCERS, supra*, 195 Cal.App.4th at page 456, the court concluded, "the 1956 opinion used overly broad language to

define the confidentiality of pension records . . . . The 1955 and 1977 Attorney General opinions, recently cited with approval by our Supreme Court, properly state a narrower scope of confidentiality . . . ."

SDCERA attempts to distinguish the 1955 and 1977 Attorney General opinions on the ground they pertain to whether information in a controller's possession is exempt. We find no logic, however, in exempting the roll from disclosure depending on what entity maintains it, and SDCERA offers no cogent reason for such a distinction. Records are either exempt or nonexempt. In *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 291 [64 Cal.Rptr.3d 661, 165 P.3d 462], a case deciphering a different exemption under the Act, the court considered it "unlikely the Legislature intended to render documents confidential based on their location, rather than their content." The 1955 opinion also indicates that records are to be treated the same for purposes of disclosure whether they are maintained by a retirement system or a controller. (*State Employees' Retirement Act, supra,* 25 Ops.Cal.Atty.Gen. at p. 91.)[6] Disclosure by SDCERA is particularly important because it pays out pension benefits itself rather than submitting the roll to a controller to fulfill that function. If the public cannot obtain the records from SDCERA, there is secrecy rather than transparency in government.

SDCERA asserts the legislative history of former section 20134 shows by analogy that the "individual records of members" language of section 31532 exempts member names and benefit amounts.[7] In 1985, the Legislature amended former section 20134—which exempted from disclosure "individual records"—to explicitly provide, "The gross amount of any benefit is not confidential and may be released upon request to the board." (Stats. 1985, ch. 1508, § 1, p. 5559.)

---

[6] In concluding the names and benefit amounts of retirees were discoverable from the controller, the 1955 Attorney General opinion explained: "We have reached this conclusion by simple deduction from the express provisions of [former] section 20134. Thus there is no real occasion to explore the legislative intent. We may observe, however, that our conclusion does not negate the Legislature's apparent objective. If [former] section 20134 prevents disclosure of certain information in the office of the State Employees' Retirement System [now CalPERS], but leaves the gate ajar at the Controller's office, it would be self-frustrating." (*State Employees' Retirement Act, supra,* 25 Ops.Cal.Atty.Gen. at p. 91.)

[7] We grant the requests of CFFR (dated Apr. 8, 2011) and amicus curiae Sacramento County Employees' Retirement System (dated Mar. 18, 2011) that we take judicial notice of the legislative history of the amendment to former section 20134. We deny the requests of CFFR (dated Mar. 25, 2011) and amici curiae Pacific Legal Foundation and Fullerton Association of Concerned Taxpayers (dated Mar. 23, 2011), and California Newspaper Publishers Association and associated media (dated Apr. 20, 2011), for judicial notice of various secondary materials not before the trial court and irrelevant to our opinion. We grant California Newspaper Publishers Association's request to the extent it pertains to legislative history materials for the amendment to former section 20134.

The legislative history shows CalPERS sponsored the amendment,[8] and the state controller routinely disclosed retiree names and pension amounts on request, but CalPERS refused to answer such inquiries and wanted the Legislature's express authorization to do so. (Sen. Com. on Public Employment and Retirement, Rep. on Sen. Bill No. 808 (1985–1986 Reg. Sess.) May 16, 1985, pp. 1–3.) While some legislative materials refer to the amendment as a modification of existing law, other materials refer to it as a clarification of existing law. For instance, the report in the Senate Committee on Public Employment and Retirement bill file explains, "Existing law does not *specifically mention* the confidentiality of the gross amount of the member's benefit, or home address and home telephone number. [¶] This bill would *clarify* the confidentiality section of the [Cal]PERS law, and provide that: [¶] the gross amount of the member's benefit is **not confidential**, and [¶] the home address, home telephone number and other personal information regarding a [Cal]PERS member is confidential and shall not be released." (*Id.* at p. 2, italics added.)

■ We are persuaded the amendment to former section 20134 was a clarification of existing law. Thus, contrary to SDCERA's assertion, the lack of a similar amendment to section 31532 does not signify the Legislature's intent to exempt from disclosure the identical records maintained by county retirement systems. We conclude the term "individual records of members" in section 31532 cannot reasonably be interpreted to include the records CFFR seeks, which SDCERA creates and uses to facilitate the periodic payment of pension benefits. The court in *SCERS* came to the same conclusion for many of the same reasons. (*SCERS, supra,* 195 Cal.App.4th at pp. 454–467.)[9]

## III

### The Court Correctly Balanced Competing Interests Under Section 6255, Subdivision (a)

Alternatively, SDCERA contends the court erred under section 6255, subdivision (a), by balancing the competing interests in favor of disclosure of retiree names linked to their pension amounts.[10] "[A] reviewing court should weigh the competing public interest factors de novo, [but] it should accept as true the trial court's findings of the 'facts of the particular case' (. . . § 6255, subd. (a)), assuming those findings are supported by substantial evidence."

[8] Notably, the San Diego County Employees Association supported the amendment.

[9] The issue is also under review in the First District, Division One, Court of Appeal. (See *Sonoma Co. Emp. Retirement Assn. v. Superior Court* (A130659).)

[10] SDCERA designates this as its primary contention in this proceeding.

(*Michaelis, Montanari & Johnson v. Superior Court, supra*, 38 Cal.4th at p. 1072; see *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 650–651 [230 Cal.Rptr. 362, 725 P.2d 470].)

■ Generally, "individuals have a legally recognized privacy interest in their personal financial information." (*Local 21, supra*, 42 Cal.4th at p. 330.) In *Local 21*, however, the court held that "[t]o the extent some public employees may expect their salaries to remain a private matter, that expectation is not a reasonable one and is, accordingly, entitled to diminished weight in the balancing test we apply." (*Id.* at p. 331.)

We conclude that likewise, public employees lack a reasonable expectation of privacy in an expense the public largely bears after their retirement. In *SCERS, supra*, 195 Cal.App.4th at page 469, the court reached the same decision because, among other things, "a public pension is deferred *public* compensation." (See also *County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21, 29 [121 Cal.Rptr.3d 151] ["Any shortfall . . . is made up through increases in employer contributions"]; *In re Marriage of Sonne* (2010) 48 Cal.4th 118, 121, 125 [105 Cal.Rptr.3d 414, 225 P.3d 546]; *Detroit Free Press, Inc. v. City of Southfield* (2005) 269 Mich.App. 275 [713 N.W.2d 28, 35] (*Detroit Free Press*).) The "names of pension recipients combined with their pension amounts is not information of a personal nature. The information does not solely relate to private assets or personal decisions. [Citations.] Rather, the pension amounts reflect specific governmental decisions regarding retirees' continuing compensation for public service. Therefore, the pension amounts are more comparable to public salaries than to private assets." (*Detroit Free Press*, at p. 34.) "[R]etirees' publicly funded pensions—like their previous salaries—are of interest to the public, and only through disclosure can the public expect to prevent abuse." (*Id.* at p. 35.)[11]

---

[11] In *Detroit Free Press, supra*, 713 N.W.2d at pages 32–37, the court held that the names of the 20 highest paid police and fire department retirees, along with their pension amounts, were subject to disclosure under a Michigan's freedom of information act (FOIA). The court construed a FOIA exemption for personnel records of law enforcement agencies as inapplicable. The court also concluded that even if the information fell within the exemption, under a provision of the FOIA requiring a balancing of interests, the exemption should be overruled because the public interest in knowing how its tax dollars were being spent outweighed the officers' privacy interest. (See also *Pulitzer Pub. v. Missouri State Employees' Retirement System* (Mo.Ct.App. 1996) 927 S.W.2d 477, 483 [statute requiring disclosure of public employees' salaries also required disclosure of retirees' pensions], cited in *Local 21, supra*, 42 Cal.4th at p. 332, fn. 5; *State ex rel. Public Employees Retirees, Inc. v. Public Employees Retirement System* (1979) 60 Ohio St.2d 93 [397 N.E.2d 1191] [retiree names subject to disclosure], overruled on another point in *State ex rel. Dispatch Printing Co. v. Johnson* (2005) 106 Ohio St.3d 160 [833 N.E.2d 274, 282–283].)

SDCERA asserts the balance tips in favor of nondisclosure because the public can glean all the information it needs on pension issues by using its Web site, which lists pension amounts without revealing payee names. In her deposition, Fritz was asked if there was any reason she could not detect pension abuses without payee names. She responded: "Yes. Because the information that the retirement system uses to calculate the pension is provided by the employer and I have to know the name in order to get the information from the employer related to their final compensation." Fritz was also asked whether she could review a person's pension calculation when the name had been redacted and "replaced with an identifier," and she responded: "I could with a lot of extra inordinate amount of work both on my part and the part of the agency." Fritz explained that with only knowledge of a retiree's final position she could not determine base pay, because "base salary doesn't show all the components that are included in compensation, and you could have two or three positions from the same agency. [¶] Even the agency wouldn't be able to tell us who that individual was because everybody gets their pension calculation independently, and also the individual might have worked for one or more agencies." Fritz also explained that knowledge of the various agencies a person worked for is necessary to determine whether there has been "pension spiking," meaning using car allowances and other factors to increase final pay for purposes of calculating retirement benefits.

Additionally, in opposition to SDCERA's motion for reconsideration, Fritz submitted a declaration that states: "Without surnames, petitioners cannot obtain information about a retiree's employment history, including past employers, past salaries, or years of employment. Without this information it is impossible to determine whether the person's pension is correctly or unfairly calculated." The declaration also states, "By comparing pensions to salaries and employment history for named individuals, I have exposed several cases of pension abuse." The declaration gives the following examples:

"1. Pension spiking: In Contra Costa County, salaried employees were allowed to use overtime credits in lieu of vacation and sick leave, accumulate their 'unused' vacation and sick leave, then sell it all back to the County in the year they retired in order to boost their final year's compensation. As examples, the San Ramon fire chief retired at age 51 with an annual pension of $284,000 even though his final salary was $221,000. The Moraga Orinda fire chief retired at age 50 with an annual pension of $241,000 even though his final salary was $185,000.

"2. Unearned service credits: Because of a deal with CalPERS, which is the retirement system for California's community colleges, K–12 teachers, who are members of the California State Teachers Retirement System . . . can

double their years of service credit by teaching one community college class per trimester (Fall, Spring, Summer) or three classes in the Summer session per year. In other words, a teacher who fills her Summer by teaching three classes at the community college, can retire after 25 years with a pension calculated as if she worked 50 years.

"3. Double dipping: The head of the California Department of Forestry (CDF) was appointed by Governor Schwarzenegger on June 26, 2004, at an annual salary of $108,753. He retired from CDF on December 2, 2005, and then took a job as the fire chief for the City of Beverly Hills. He retired (again) on October 27, 2007—22 months later, and receives a pension of $227,325. He also receives a federal pension from service in the Navy and the U.S. Department.

"4. Excessive compensation: The retired city manager of Vernon receives an annual pension of over $500,000 in a city with fewer than 100 residents."

 The evidence amply supports the court's finding that CFFR has a legitimate interest in the information and does not seek it merely because it wishes to embarrass top paid retirees or expose them to ridicule. The public is, of course, interested in knowing the total amount of pension payments, but it also has a legitimate interest in knowing how pensions are calculated. The Act's core purpose is to prevent secrecy in government and contribute significantly to the public understanding of government activities. (*City of San Jose v. Superior Court* (1999) 74 . Cal.App.4th 1008, 1016–1017 [88 Cal.Rptr.2d 552].)[12]

SDCERA also asserts the balance tips in favor of retirees' privacy interests, based on evidence that disclosure could subject them to harm. SDCERA

---

[12] SDCERA cites *City of San Jose v. Superior Court, supra*, 74 Cal.App.4th at page 1025, for the proposition that "facilitating research is not the purpose of public access to government records." *City of San Jose*, however, does not pertain to the calculation of pension benefits and the public's right to know how the government is spending taxpayer funds. Rather, the opinion concerned a newspaper's effort to obtain a mailing and telephone list of persons who had complained about airport noise. (*Id.* at p. 1011.) The court held, "Under the facts of this particular case, where City makes public a monthly noise report and other records which provide a wealth of information about airport noise complaints, the public's interest in disclosure of the complainants' identity and personal information is minimal." (*Id.* at pp. 1011–1012.) The opinion does not suggest the public has no right to the disclosure of information that would allow it to detect pension abuses.

SDCERA's reliance on *National Assn. of Retired Federal Employees v. Horner* (D.C.Cir. 1989) 279 U.S. App.D.C. 27 [879 F.2d 873] (*Horner*), is also misplaced. In *Horner*, the court held that federal retirees had a privacy interest under the federal freedom of information act in their names *and addresses*, which a national association of retired persons sought to further its lobbying activities. The court held that "disclosure of the information requested here would interfere with the subjects' reasonable expectations of undisturbed enjoyment in the solitude and seclusion of their own homes." (*Id.*, 879 F.2d at p. 876.)

submitted a declaration by Cesario Reyes, a retired Los Angeles Police Department detective who worked in the financial crime division and has testified as an expert in fraud cases. The declaration explains that criminals prey on the elderly, and they find targets "in a number of ways. Among the methods used are a search of obituaries in hopes of identifying an elderly widow or widowers; review of websites maintained by senior centers to discern the identity of members or participants; and more recently, use of social media sites." The declaration explains that criminals try to determine whether targets have money through a number of devices, including phony mail and telephone surveys, and the placement of newspaper ads that seek responses from persons in certain income groups.

The Reyes declaration adds: "While the creativity of [criminals] is wide-ranging, there is no question that the ability to easily locate a list of older people with substantial incomes is of enormous value to perpetrators of financial fraud on the elderly and would create windows of opportunity for those persons, and will subject the persons whose identities are disclosed to an increased risk of financial fraud and other criminal activity." The declaration cautions that some of the information sought will reveal disabilities, and "elderly persons who suffer from disabilities are often more vulnerable than those elderly persons who enjoy relatively good health."

SDCERA also submitted a declaration by Paul Greenwood, a deputy district attorney for San Diego County who headed an elder abuse prosecution unit, had testified as an expert, and had helped draft elder abuse legislation. The declaration states: "[C]riminals scour public records looking for their target victims. Sometimes, the information is gained from obituaries or advertisements placed in newspapers or internet mediums such as Craigslist. Crooks are actively seeking out public information that can identify age and economic resources of a potential victim." The declaration also states elder abuse is on the rise because of the economy, and, "In my opinion, the disclosure of the identities of retired members of [SDCERA] who receive retirement benefits equal to or greater than $100,000 per year would place these persons at a significantly increased risk of victimization by those persons who prey on the elderly." CFFR submitted no countervailing evidence.

The court found the declarations constitute substantial evidence of potential harm, a relevant factor in the balancing test under section 6255. (*Connell v. Superior Court* (1997) 56 Cal.App.4th 601, 612 [65 Cal.Rptr.2d 738]; *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1346 [283 Cal.Rptr. 893, 813 P.2d 240] [court acknowledged public interest in nondisclosure of governor's appointment schedules and calendars because of potential threat to his physical security].) The declarations also, however, show that criminals

can obtain information on elderly retirees and their financial conditions by other means. An out-of-state opinion observes: "It is a fact of modern life in this age of technology that names can be used to obtain other personal information from various sources, but we conclude that is not sufficient [under a state public records act] to prevent the disclosure of [public employee] names." (*King County v. Sheehan* (2002) 114 Wn.App. 325 [57 P.3d 307, 317].)

Further, SDCERA presented no evidence of any actual adverse consequences from previous disclosures, another factor we may consider. (*Local 21, supra*, 42 Cal.4th at p. 338.)[13] In California, there is a lengthy history of the disclosure of such information. CalPERS has been releasing the information since 1985 when former section 20134 was amended to expressly clarify that the "individual records" exemption does not apply to retiree names and pension amounts, and before the amendment the state controller was routinely disclosing the same information under the Attorney General's 1955 opinion. Yet, the record here reveals no untoward consequences.

SDCERA also argues that the court's attempt to protect retirees from financial opportunists by ordering CFFR not to publicize retiree names is illusory, and the Act does not allow such an approach. SDCERA asserts that if it is required to disclose the records to CFFR, it is also required as a matter of law to disclose them to any other member of the public who may seek them. We agree with SDCERA's assessment, but we affirm the court's order for reasons discussed. As the court wrote in its order denying SDCERA's motion for reconsideration, "Even if it is true, as contended by SDCERA, that the court overestimated the amount of protection it could lawfully provide to the retirees in the November 2 order, the fact remains that both the statutory language of the [Act] and the decisions interpreting it presuppose that disclosure of public records will be the norm. The burden to overcome this presumption is heavy."[14]

We also disagree with SDCERA's assessment that retiree names are immaterial because pension benefits are vested, and thus no amount of

---

[13] In *Local 21, supra*, 42 Cal.4th at page 338, the court explained, "Local 21 has not introduced any evidence of adverse consequences resulting from the disclosure of [names of active employees and salaries] in the past, although the information regularly was published in a local newspaper." The opinion also states the "Newspapers' evidence also establishes that it is a policy of the State Controller to consider the name and salary of every public employee a matter of public record and to disclose this information to any member of the public upon request." (*Id.* at p. 332.)

[14] CFFR, however, is bound by the court's order prohibiting its publication of retiree names, because it does not challenge the order, and indeed it invited any arguable error in that component of the order by urging the court to adopt it. (See *Estate of Lensch* (2009) 177 Cal.App.4th 667, 678 [99 Cal.Rptr.3d 246].)

investigation will change them, and because Fritz testified in her deposition that pension spiking is not illegal. CFFR's stated purpose is "to educate government decision-makers and the general public about California public employee retirement benefit issues, and to help solve the crisis of unsustainable state and local retirement costs by developing fiscally responsible solutions that are fair to employees, employers, and taxpayers." Even if CFFR's work cannot bring retrospective change, it may bring prospective change.

SDCERA's reliance on *Local 21* for the proposition that the Supreme Court has indicated a retiree's pension benefit information is exempt from disclosure is misplaced. In the portion of *Local 21* to which SDCERA refers, the issue was whether statutes applying to peace officers barred disclosure of their salaries. Under Penal Code section 832.7, subdivision (a), an officer's "personnel records . . . or information obtained from these records" are confidential and shall not be disclosed. As is relevant here, Penal Code section 832.8 defines "personnel records" to include "any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following: [¶] (a) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information. . . ." The union argued "that salary is 'personal' because it relates to the individual and because most persons view their salary as a private matter." (*Local 21, supra,* 42 Cal.4th at p. 341.) The court rejected the argument, concluding a "public employee's salary relates to a particular person, but . . . it is a matter of public interest and not primarily a matter of the individual's private business." (*Ibid.*)

Penal Code section 832.8 also defines the term "personnel records" as including, "Election of employee benefits." (Pen. Code, § 832.8, subd. (c).) Regarding this exemption, *Local 21* added: "Absent unusual circumstances, an employee's selection of benefits—such as the type of medical insurance, the number of family members covered, and the choice whether to obtain life or disability insurance—reveals information concerning the individual's personal life and financial decisions but little, if anything, about the operations of the government agency that would not be revealed by making public the types of benefits offered generally by the agency to its employees. The amount of salary paid to a particular individual, on the other hand, does provide information concerning the governmental agency in which the public has a legitimate and traditionally recognized interest." (*Local 21, supra,* 42 Cal.4th at p. 343.) In contrast, the disclosure of pension information provides information about the government's management of public finds, in which the public has a legitimate interest. Pension benefits are not exclusively related to personal financial decisions of former employees.

## DISPOSITION

The petition is denied. CFFR and Fritz are entitled to costs as the prevailing parties.

Benke, J., and Huffman, J., concurred.