Filed 7/23/25  Pavone v. Dept. of Corrections & Rehabilitation CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| BENJAMIN PAVONE, | C101703 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2022-80004040-CU-WM-GDS) |
| v. | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Defendant and Respondent; | |
| SHELTON ADAMS et al., | |
| Real Parties in Interest and Appellants. | |

Plaintiff Benjamin Pavone is an attorney representing real parties in interest (collectively appellants), who were 22 inmates housed at the Correctional Training Facility in Soledad (Facility) by defendant Department of Corrections and Rehabilitation (Department) at the time the Department conducted a raid.  Appellants claimed, as a result, they were infected with COVID-19.  Appellants filed a request with the

1

Department under the California Public Records Act (Gov. Code, § 7920.000, et seq.)[1] (Act) for records pertaining to the raid. The Department declined to disclose any records. Appellants petitioned for writ of mandate arguing Government Code section 7923.605 and Penal Code section 832.7 compelled disclosure. The trial court found appellants were not entitled to records and dismissed the petition. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Because the parties do not challenge the factual recitation contained in the trial court's order, we will adopt it here.

"Pavone is an attorney representing the 22 real parties in interest, who are all current or former [Department] inmates housed at [the Facility]. On July 20, 2020, around 3:00 a.m., custodial officers at [the Facility] conducted a raid, named Operation Akili, on about 100 inmates to investigate and curtail activities by a . . . prison gang. According to [appellants], during this investigation, many Black inmates were forcefully dragged out of bed, beaten, and restrained while being verbally subjected to racial expletives. [Appellants] further allege[] that many custodial officers, in conducting the raid, violated [the Department]'s COVID-19 safety policies regarding masks and social distancing.

---

[1] The Act was previously codified as Government Code section 6250 et seq., but it has since been recodified as section 7921.000 et seq. (Stats. 2021, ch. 614, § 2.) The recodification was "intended to be entirely nonsubstantive in effect," and does not "substantively change the law relating to inspection of public records." (§ 7920.100.)

[2] The Department's motion to strike 65 documents from appellants' appendix is denied. While the documents cited by the Department may have been stricken from consideration by the trial court, the documents are exhibits to pleadings properly filed with the trial court. Still, we review the correctness of an order or judgment as of the time it was made upon matters that were before the trial court (*In re Zeth S.* (2003) 31 Cal.4th 396, 405), which would not include exhibits stricken from the pleadings.

"According to [appellants], the prison suffered a large COVID-19 outbreak totaling at least 2,700 infections and 17 deaths from July 2020 through December 2020. All of the real-party inmates suffered COVID-19 infections, though not all of them were subjected to the raid. Raemon Pardue, who was not subjected to the raid, suffered symptoms of COVID-19 around August 11, 2020[,] and died [nine] days later.

"In October 2020, [appellants[3]] sent two public record requests to [the Department] asking for information on the following:

"[(1)] The raid conducted on July 20, 2020 . . . , including but not limited to, all information inspiring or justifying the raid; all information explaining the reason(s) for the raid; all statements related to the conduct of the raid; all information about the event, its planning, its procedure, its legality, its necessity, its dress code and its usefulness; any information, memoranda or directives speaking to the expectations or protocol of the personnel carrying out the raid; all information about the consequences of the raid, including any injuries; any complaints about the raid; any action in response to the raid; and any and all media inquiries, statements or official broadcasts; any 602's; any internal grievances; any internal reprimands; any policy or practice memoranda about conducting such raids; and any information as to why so much racial invective was employed[;]

"[(2)] The identity of all guards [who] carried out the July 20, 2020 raid . . . , and all statements, reports and/or accounts given by any of them in relation thereto[;]

"[(3)] The identity of all inmates [who] were subjected to the July 20, 2020 raid: name and [Department] number[;]

---

[3] Pavone made a record request to the Department under the Act before representing real parties in interest. Despite this fact, we will refer to the appellants collectively as making the request. While the Department raises a standing argument, we will not reach that issue since the parties' dispute can be resolved on other grounds.

"[(4)] All 602 grievances filed against Isidro Pantoja Perez from January 1, 2018[,] to October 25, 2020.

"[The Department] responded in part as follows:  [¶]  While details of this investigation are confidential, we can confirm that an investigation was held as the result of [gang] behavior that had been ongoing at [the Facility].  The incarcerated people in the investigation were not identified based on their race, and all safety protocols were followed throughout the investigation.  Warden [Craig] Koenig personally toured during the investigation to ensure it was being conducted safely and appropriately.  Nobody was harmed and the institution's normal operations resumed quickly."

Appellants filed a petition for writ of administrative mandate to compel the Department to disclose the requested information.  In it, they argued the requested information was not confidential because of the passage of Penal Code section 832.7, subdivision (b)(1).  Appellants limited their argument to records pertaining to the raid, alleging it caused great bodily injury in the form of spreading COVID-19 to real parties. In their merits brief, appellants argued again for application of Penal Code section 832.7, arguing that, during the raid, custodial officers violated COVID-19 protocols, causing the COVID-19 outbreak at the Facility.  At oral argument on the petition, appellants argued their Penal Code section 832.7 claim rested on allegations custodial officers violated COVID-19 protocols.  Appellants also argued Government Code section 7923.605 compelled disclosure of the requested information because the section requires disclosure to victims of crimes.

The trial court denied appellants' petition, finding Government Code section 7923.605 did not compel disclosure because real parties were not victims of a crime and disclosure of the information would endanger the safety of witnesses involved. The trial court further found Penal Code section 832.7 did not require disclosure because the provision could not be interpreted "as encompassing the prison security activities conducted by custodial officers [who] may have played a role in transmitting COVID-19

4

during the pandemic.  These alleged circumstances do not constitute a use of force under [Penal Code] section 832.7."

Appellants appeal.

## DISCUSSION

"The California Constitution has long recognized the right to access information concerning the conduct of the people's business.  (Cal. Const., art. I, § 3, subd. (a).)  The [Act], enacted in 1968 and recodified effective January 1, 2023, echoes that constitutional right, stating that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.'  [Citation.]  The [Act] grants access to public records held by state and local agencies.  [Citations.]  'In general, [the Act] creates "a presumptive right of access to any record created or maintained by a public agency that relates in any way to the business of the public agency." ' " (*Di Lauro v. City of Burbank* (2025) 110 Cal.App.5th 969, 980.)

The Act, however, exempts "the disclosure of records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of . . . any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes." (Gov. Code, § 7923.600, subd. (a).)

Appellants contend they can avail themselves of exceptions to this disclosure exemption under Government Code section 7923.605 and Penal Code section 832.7.  We will address each section in turn.

# I

*Government Code Section 7923.605 Does Not Require Disclosure*

## A

*Applicable Law And Standard Of Review*

Government Code section 7923.605, subdivision (a) provides: "Notwithstanding [s]ection 7923.600, a state or local law enforcement agency shall disclose the names and addresses of persons involved in, or witnesses other than confidential informants to, the incident, the description of any property involved, the date, time, and location of the incident, all diagrams, statements of the parties involved in the incident, the statements of all witnesses, other than confidential informants, to the victims of an incident, or an authorized representative thereof, . . . and any person suffering bodily injury or property damage or loss, as the result of the incident caused by . . . a crime . . . , unless the disclosure would endanger either of the following: [¶] (1) The safety of a witness or other person involved in the investigation[ or] [¶] (2) [t]he successful completion of the investigation or a related investigation."

Appellants argue for an independent standard of review citing *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791. Contrary to appellants' argument, *Ghirardo* does not stand for the proposition that independent review applies when the case rests on the same documentary evidence presented in the trial court. *Ghirardo* provides the trial court is vested with deference to find facts, i.e., what happened and when, and the reviewing court reviews those findings to independently determine whether they meet the applicable legal standard. (*Id*. at pp. 800-801.) Similarly, under the Act, " '[f]actual findings made by the trial court will be upheld if based on substantial evidence. But the interpretation of the [Act], and its application to undisputed facts, present questions of law that are subject to [independent] appellate review.' " (*Dixon v. Superior Court* (2009) 170 Cal.App.4th 1271, 1275; accord, *San Diego County Employees Retirement Assn. v. Superior Court* (2011) 196 Cal.App.4th 1228, 1241-1242 [" '[A] reviewing court . . . should accept as

6

true the trial court's findings of the "facts of the particular case" . . . , assuming those findings are supported by substantial evidence' "].)

" '[W]hen a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.' " (*Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 669-670.)

B

*Disclosure Is Not Required*

As a legal matter, appellants argue the safety of witnesses and officers is not endangered because the gang investigation has been completed. Appellants argue Penal Code section 832.7, subdivision (b)(8)(A) sets a reasonable time for completing an investigation at 60 days with extensions at 180-day intervals, which has long expired considering the raid occurred over four years ago. Thus, to appellants, it is impossible that the gang investigation is ongoing. Not so. The language of Government Code sections 7923.600 and 7923.605 does not require an investigation be ongoing for the Department to avail itself of the exception to disclosure when "[t]he safety of a witness or other person involved in the investigation" is endangered. (Gov. Code, § 7923.605, subd. (a)(1).) Thus, while it may be relevant, an ongoing investigation is not required to substantiate a finding the safety of those involved in the investigation is endangered by disclosure.

As a factual matter, appellants argue insufficient evidence supports the trial court's finding the safety of custodial officers and witnesses would be endangered by disclosure.

When making its decision, the trial court found "identities and statements of custodial officers and witnesses regarding gang activities . . . are exactly the type of information that would compromise the safety of witnesses and others involved." When making this finding, the trial court cited to the declaration of Enrique Galvan who is employed by the Department and is the custodian of records for the Facility. Galvan had been employed with the Department for 27 years and had previously held the position of a correctional lieutenant, where he became familiar with the Department's policies and prison culture.

Galvan declared that "[p]rison gangs are a significant threat to the safety and security of institutional staff, inmates, and the general public. They are highly sophisticated, complex criminal organizations that are responsible for a wide variety of criminal activity, including murders, assaults, extortion, and drug trafficking, both inside and outside prison grounds. A gang member is an individual who has been accepted into the membership of the gang by the gang leadership. A gang associate is an individual who carries out orders and does footwork for the gang, but who has not been admitted into membership. Prison gang activity by gang members and gang associates presents one of the greatest threats to institutional safety and security."

Galvan further declared, "The Department's officials take extreme precaution in concealing the identity of informants who provide information about prison gang activity. When an inmate is identified as having provided gang information to the Department or other law enforcement officials, including information provided when the inmate debriefs from a prison gang, he is considered a 'weak link' or 'snitch,' and becomes a priority for assault by gang members and associates. Even when housed in protective custody, incarcerated confidential informants may be assaulted by other inmates who owe a debt to a prison gang and seek to eliminate their debt by getting into the gang's good graces. And if the informant is out of custody, the safety of the informant and his family may be in jeopardy. I am aware of several instances in which inmates, or members of their

family, have been targeted for assault or have been assaulted or killed by prison gang members/associates for cooperating with law enforcement."

Galvan's declaration provides substantial evidence for the trial court's factual finding that custodial officers involved in the raid and inmates who gave statements during the gang investigation could become targets of gang retribution, and thus their safety would be endangered. Indeed, Galvan declared he had personal knowledge of retributive acts by gang members, gang associates, and inmates indebted to the gang against those perceived to have cooperated with investigations. It is reasonable to infer Galvan's experience with gang violence in the Facility is indicative of future safety threats against inmates and officers in the Facility.

Appellants disagree contending there is no evidence of ongoing gang activity in the Facility, the inmates requesting records deny gang affiliation and thus pose no risk, and the identities of officers involved in the raid are already known. But this reweighs the evidence presented to the trial court, something we are precluded from doing. (*Sanders v. Superior Court*, *supra*, 26 Cal.App.5th at pp. 669-670.) Galvan's declaration in fact refutes these points by providing that gang activity is the biggest ongoing safety concern to the Facility and gang crimes are common in and outside of the Facility. Further, even if real parties are not gang members, knowledge of those involved in the raid still presents safety concerns. Galvan declared that, in addition to gang members and affiliates presenting a safety risk, so do inmates who are indebted to the gang and looking for ways to repay the indebtedness. Finally, while certain custodial officers may be suspected of having participated in the raid because they were recognized by real parties, lists of identities and the officer's statements would confirm their participation or reveal identities not known.

Read as a whole, the record supports the trial court's factual finding that disclosure of the custodial officers and inmates involved in the gang raid would endanger the safety of those custodial officers and inmates. Accordingly, the trial court did not err by finding

Government Code section 7923.605 permits nondisclosure. Because we conclude disclosure is not required on this ground, we do not review the trial court's finding that disclosure is not required because real parties are not victims of a crime.

II

*Penal Code Section 832.7 Does Not Require Disclosure*

A

*Applicable Law*

The parties do not dispute that Penal Code section 832.7 applies to the Department. To understand the personnel records the Department is required to disclose under Penal Code section 832.7, subdivision (b)(1)(A)(ii) it is necessary to first understand the personnel records an agency must retain under Penal Code section 832.5. The provision requires retention of citizen "[c]omplaints and any reports or findings relating to these complaints . . . for a period of no less than [five] years for records where there was not a sustained finding of misconduct and for not less than 15 years where there was a sustained finding of misconduct." (*Id*., § 832.5, subd. (b).) " 'Sustained' means a final determination . . . following an investigation and opportunity for an administrative appeal . . . that the actions of the peace officer or custodial officer were found to violate law or department policy." (*Id*., § 832.8, subd. (b).) Penal Code section 832.5 further provides findings that are not sustained findings include frivolous, unfounded, and exonerated findings. (*Id*., § 832.5, subd. (c).) " 'Frivolous' means totally and completely without merit or for the sole purpose of harassing an opposing party." (Code Civ. Proc., § 128.5, subd. (b)(2).) " 'Unfounded' means that the investigation clearly established that the allegation is not true." (Pen. Code, § 832.5, subd. (d)(2).) " 'Exonerated' means that the investigation clearly established that the actions of the peace or custodial officer that formed the basis for the complaint are not violations of law or department policy." (*Id*., § 832.5, subd. (d)(3).)

10

"Effective January 1, 2019, Senate Bill No. 1421 (2017-2018 Reg. Sess.) (Senate Bill 1421) amended [Penal Code] sections 832.7 and 832.8 to render certain types of law enforcement personnel records nonconfidential and subject to public disclosure under the [Act]." (*Banuelos v. Superior Court* (2024) 106 Cal.App.5th 542, 548.) Specifically, Penal Code section 832.7, subdivision (b)(1)(A)(ii) provides, "Notwithstanding . . . [s]ection 7923.600 of the Government Code, or any other law, the following peace officer or custodial officer personnel records and records maintained by a state or local agency shall not be confidential and shall be made available for public inspection pursuant to the [Act]: [¶] . . . A record relating to the report, investigation, or findings of . . . [¶] . . . [¶] [a]n incident involving *the use of force against a person* by a peace officer or custodial officer that resulted in death or in great bodily injury." (Italics added.) Further, "[a] record of a complaint, or the investigations, findings, or dispositions of that complaint, shall not be released pursuant to this section if the complaint is frivolous . . . or if the complaint is unfounded." (Pen. Code, § 832.7, subd. (b)(9).)

"The Legislature enacted Senate Bill 1421 because it 'perceived California as "one of the most secretive states in the nation in terms of openness when it comes to officer misconduct and uses of force." ' [Citation.] The legislative 'intent behind Senate Bill 1421 was to provide transparency regarding instances of an officer's use of significant force and sustained findings of officer misconduct by allowing public access to officer-related records maintained either by law enforcement employers or by any state or local agency with independent law enforcement oversight authority.' " (*Banuelos v. Superior Court*, *supra*, 106 Cal.App.5th at p. 548.)

B

*Disclosure Is Not Required*

As an initial matter, we note Penal Code section 832.7 cannot serve as a basis to obtain records of generalized investigations into prison operations, as appellants appear to seek with their record request. Section 832.7, subdivision (b) pertains only to the

11

disclosure of officer personnel records. As relevant to section 832.7, appellants requested all information pertaining to any complaints about the raid, any action in response to the raid, complaints filed by inmates against custodial officers, and any internal reprimands. Appellants also requested all inmate grievances filed against Isidro Pantoja Perez between January 1, 2018, and October 25, 2020. The Department did not address the last request in its public record response, and appellants appear to have abandoned their pursuit for these records since their petition for writ of mandate focuses on disclosure of records pertaining to the raid.

Appellant's merits brief filed in the trial court also focuses on records pertaining to the raid and specifically those pertaining to the subsequent spread of COVID-19. Appellants argued in the trial court they were entitled to these records under Penal Code section 832.7, subdivision (b)(1)(A)(ii) because the raid violated COVID-19 safety policies and caused the transmission of COVID-19. Appellants reiterate this argument in their appellate briefs by focusing on possible violations of "safety protocols." Given these arguments, we read appellants' contention as they are entitled to two categories of personnel records under section 832.7, subdivision (b)(1)(A)(ii): (1) those pertaining to contraction of COVID-19 caused by the violation of safety protocols, such as yelling in the face of a real party while not wearing a mask; and (2) those pertaining to contraction of COVID-19 caused by holding a raid during a pandemic.

The Department argues the transmission of COVID-19 is not a use of force because Penal Code section 832.7, subdivision (b)(1)(A)(ii) was meant to address physical acts of force, not the transmission of a virus. Appellants argue the provision has a broader reach and encompasses situations where custodial officers violate safety protocols or conduct a raid during a pandemic.

" ' " 'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning.

12

[Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' " ' " (*George v. Susanville Elementary School Dist.* (2024) 103 Cal.App.5th 349, 354.)

We first discuss the extent of disclosure required by Penal Code section 832.7, subdivision (b)(1)(A)(ii). Sustained and exonerated records related to reports, investigations, and findings must be disclosed under that subdivision because Penal Code section 832.7 provides for disclosure of specified records with the exception of those based on frivolous and unfounded reports. (*Id.*, § 832.7, subd. (b)(1)(A)(ii), (b)(9).)[4] A sustained use of force finding means a finding the facts underlying the use of force allegation constituted a violation of department policy or law. (Pen. Code, § 832.8, subd. (b).) An exonerated use of force finding is a finding the facts underlying the use of force allegation occurred, but the facts did not constitute a violation of department policy or law. (*Id.*, § 832.5, subd. (d)(3).) Further, the purpose of Penal Code section 832.7 is to bring light to instances of officer misconduct *and* uses of force notwithstanding improperness. (*Banuelos v. Superior Court*, *supra*, 106 Cal.App.5th at p. 548.) Thus, while the use of physical force is central to the statutory scheme, we cannot agree with the Department that physical force is all that is contemplated, especially considering the language of Penal Code section 832.7, subdivision (b)(1)(A)(ii) does not limit its applicability to uses of physical force. (Code Civ. Proc., § 1858 [judges shall not insert into a statute words that have been omitted or omit words that have been inserted].) Indeed, the scheme's focus on exposing misconduct and whether a violation of

---

[4] This is not true for subsequently listed disclosable records in Penal Code section 832.7, subdivision (b), which requires disclosure of records related only to sustained findings.

13

department policy or law occurred reads into the section more than uses of physical force but also conduct that violates the Department's policies or the law that results in great bodily injury.

We next turn to appellants' record request. Appellants seek records where the use of force reported was a violation of COVID-19 safety protocols. As it pertains to its own safety protocols, the Department's record response indicated all safety protocols were followed. Because factual reports of violations of Department policy were determined to be unfounded, the Department is not required to disclose records pertaining to those reports. (Pen. Code, § 832.7, subd. (b)(9).) As to records pertaining to allegations of COVID-19 transmission based on conduct that did not amount to a violation of Department policy or use of physical force, i.e., holding a raid pursuant to the Department's policies, those records do not contain allegations contemplated by section 832.7, subdivision (b)(1)(A)(ii), and thus the Department was not required to disclose records of such reports, investigations, or findings.[5] Accordingly, the Department complied with Penal Code section 832.7 when responding to appellants' record request.

---

[5] In their Government Code section 7923.605 argument, appellants argue officers used physical force such as kicking and punching resulting in great bodily injury other than transmission of COVID-19 during the raid. They do not argue for disclosure of records related to these reports under Penal Code section 832.7. In any event, the Department stated in its record response that inmates were not harmed during the raid, indicating reports of physical force causing injury other than COVID-19 were determined to be unfounded.

14

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


/s/
ROBIE, Acting P. J.

We concur:


/s/
BOULWARE EURIE, J.


/s/
WISEMAN, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.